[Civ. No. 16895.   First Dist., Div. Two.   Nov. 26, 1956.]

LUTHER M. WARDA, Respondent, v. MAX SCHMIDT, Appellant.

Freed & Freed, Eli Freed and Eugene A. Mash for Appellant.

W. A. Lahanier, Frank B. Blum and John F. Gallen for Respondent.

KAUFMAN, J.—Defendant appeals from a judgment for plaintiff on a book account.

Plaintiff is a plastering contractor. Defendant is a builder. During the years 1946-1949 defendant opened in the City of Millbrae a subdivision known as Meadow Glen. In 1946 defendant built 48 houses. Plaintiff did the outside plastering work on these houses under an oral contract. He was paid $500 per house. In 1947 defendant commenced building a group of 171 houses. He furnished to plaintiff a master tract plan to enable plaintiff to bid on the plastering work for the 171 houses. The master plan indicated that the 171 houses were to be located on almost level ground and that the windows therein were to have wood casings. On May 22, 1947, plaintiff and defendant entered into a written contract whereby plaintiff was to do the plastering work on the 171 houses for which he was to be paid $500 per house for plastering the outside and $800 per house for plastering the inside. Defendant had the option to use sheetrock interiors so that inside plastering might not be required for all the houses. The contract was based upon the master plan. Its terms provided for installment payments of the amount due thereunder: 60 per cent was to be paid to plaintiff when the

first coat of plaster was put on; 30 per cent upon completion of the second coat, and the remaining ten per cent when the wash was applied and the job completed.

Defendant deviated from the master plan during the construction of the 171 houses. The elevations were raised on some of the houses thus requiring a larger area to be plastered. In addition, steel rather than wood casings were used for the windows. Steel window casings are plastered in a different manner than wooden ones. The technique of plastering steel casings is known to the plastering trade as bullnosing. It requires more plaster than is used for a wood window casing.

Plaintiff complained to defendant about the extra plastering necessitated by the changes in the master plan. The parties entered into an oral agreement whereby defendant agreed to compensate plaintiff for the extra plaster work. No amount was set by the parties. Subsequently, plaintiff billed defendant for the additional plastering at the rate of $2.25 a square yard for exterior plastering and $1.50 a square yard for interior plastering.

Defendant planned to build an additional 110 houses in Meadow Glen. In the latter part of 1947 he entered into an oral contract with plaintiff whereby he agreed to pay plaintiff the flat rate of $2.50 a square yard for the plaster work on these houses.

A notice of completion of the 171 houses was recorded on December 22, 1948. One for the 110 houses was recorded on February 25, 1949. Plaintiff commenced this action on January 2, 1953. The complaint filed on that day was in two counts: an account stated and a book account. Plaintiff sought to recover $38,658.60 which was alleged to be the balance owed to him by defendant as a result of the aforementioned events. The trial court, sitting without a jury, found and concluded that plaintiff did not prove an account stated; that he had established a book account, and that the amount which defendant was indebted to plaintiff under the book account was $23,592.64, for which plaintiff was entitled to a judgment. A judgment was accordingly entered.

Defendant pleaded as an affirmative defense the bar of the two-year statute of Code of Civil Procedure, section 339, subdivision 1 (liability not founded upon an instrument of writing). It is his position that plaintiff received money in excess of that provided for in the written contract of May 22, 1947; that said contract was so discharged or that it was

superseded by the two oral contracts entered into in 1947; that the pleading of an action on an account subject to the four-year statute of Code of Civil Procedure section 337, subdivision 2, was an improper device to circumvent the applicable two-year statute, as there was no account between the parties and the papers produced as constituting the book account did not, as a matter of law, constitute a book account within the purview of section 337, subdivision 2, *supra,* because no debits were charged when accrued, but a balance only entered as a debit after, completion of all the work, because they showed irregularities which prevented the required accuracy and because the balance found due by the court is not shown by the account and cannot be calculated from it.

■ A book account is created by the agreement or conduct of the parties thereto. (*Mercantile Trust Co.* v. *Doe,* 26 Cal.App. 246 [146 P. 692]; *Gardner* v. *Rutherford,* 57 Cal. App.2d 874, 885-886 [136 P.2d 48]; *Parker* v. *Shell Oil Co.,* 29 Cal.2d 503, 507 [175 P.2d 838].) ■ The mere recording in a book of transactions or the incidental keeping of accounts under an express contract does not of itself create a book account. (*Stewart* v. *Claudius,* 19 Cal.App.2d 349, 352 [65 P.2d 933]; see also *Tillson* v. *Peters,* 41 Cal.App.2d 671, 676-677 [107 P.2d 434]; *Lee* v. *DeForest,* 22 Cal.App.2d 351, 360-361 [71 P.2d 285].) Such memoranda cannot be utilized under the guise of a book account as a device to extend the statute of limitations beyond the time it would run on the contractual obligation. (See cases collected in *Parker* v. *Shell Oil Co.,* 55 Cal.App.2d 48 at page 55 [130 P.2d 158].) ■ However, the parties to a written or oral contract may, by agreement or conduct, provide that monies due under such contract shall be the subject of an account between them. (*Mercantile Trust Co.* v. *Doe, supra,* 26 Cal.App. 246; *Gardner* v. *Rutherford, supra,* 57 Cal.App.2d 874, 886; *Parker* v. *Shell Oil Co., supra,* 29 Cal.2d 503, 507.) In that event a cause of action arising therefrom is on the account and not on the underlying contract. (*Parker* v. *Shell Oil Co., supra,* 29 Cal.2d 503, 507.) Such is the situation in this case.

George Bryant, who was plaintiff's foreman and bookkeeper at the time of the events here involved, testified that the installment-payment provisions of the May 22, 1947, contract were never followed and that all payments made by defendant to plaintiff were on account. Plaintiff testified likewise. Linea Miller, who was defendant's bookkeeper at the

time of the events here involved, was called as a witness by defendant. She testified that the payments made to plaintiff during this period were on account. The two oral contracts entered into between plaintiff and defendant in 1947 had no payment provisions. The trial court could properly infer that this was because payments thereunder were to be subject to the account already established between the parties. A transfer in writing of a credit of defendant with a third party to plaintiff expressly stated that it was received by plaintiff on the account of defendant.

If there is an account relation between the parties the requirements as to the character of the book or books and the manner in which the account must have been kept to be acceptable as a book account under section 337, subdivision 2, *supra,* are not very stringent. ''The law does not prescribe any standard of bookkeeping practice which all must follow, regardless of the nature of the business of which the record is kept. We think it makes no difference whether the account is kept in one book or several so long as they are permanent records, and constitute a system of bookkeeping as distinguished from mere private memoranda.'' (*Egan* v. *Bishop,* 8 Cal.App.2d 119, 122 [47 P.2d 500].)

The book must show against whom and in whose favor the charges are made. (*Wright* v. *Loaiza,* 177 Cal. 605, 607 [171 P. 311].) It must have been kept in the ordinary course of business. (*Epley* v. *Cunningham,* 134 Cal.App.2d 769, 770 [286 P.2d 380].) It must state the debits and credits of the transactions involved completely enough so that the amount due to the claimant can be reasonably determined from it. (*Robin* v. *Smith,* 132 Cal.App.2d 288, 291 [282 P.2d 135].) Although normally entries in an account book must be made at or near the time of the transactions to which they relate and there should be no long delay without satisfactory explanation (*Landis* v. *Turner,* 14 Cal. 573, 575), an irregularity in that respect is not necessarily fatal to an action on a book account. (See *Schneider* v. *Oakman Consol. Min. Co.,* 38 Cal.App. 338, 341 [176 P. 177], in which an entry was accepted as properly included in the account although it was due on December 3, 1912, but entered upon the books as late as August, 1914.

The evidence in this case clearly establishes that plaintiff had in his office a loose leaf ledger book of a permanent nature known as a Dibold ledger. Three pages from the ledger were received in evidence. The pages are dated 1948,

1949, 1950. Each page is entitled "Meadow Glenn [sic], Millbrae, Calif., Max Schmidt." Bryant, plaintiff's foreman-bookkeeper, who was the custodian of the ledger, testified that the entries on these pages were made by him or under his supervision and the manner in which they were made. The ledger sheets start with a credit item in favor of defendant on January 5, 1948. Eleven credit items follow. The twelfth item posted on January 14, 1949, shows a debit balance. There are eleven further items which consist of ten credits with adjustments to reflect them in the debit balance and one debit entry. The last entry considered by the trial court was dated October 9, 1950.

Bryant, by way of foundation, testified that he made notes of the plastering work actually done in a memorandum or work book. These figures were reduced to itemized sheets showing the work done and computing the monetary value thereof. These sheets were attached to a bill submitted by plaintiff to defendant on January 14, 1949. Bryant testified that the bill was not earlier submitted because plaintiff had been receiving payments on account and it was only when the job was nearing completion that the bill was prepared. Plaintiff testified that this bill along with others rendered were kept in a "regular book." Plaintiff at the trial did not contend that book of bills was one of several books constituting the book account. (See *Gardner* v. *Rutherford, supra,* 57 Cal.App.2d 874; *Egan* v. *Bishop, supra,* 8 Cal.App.2d 119.) The bill from plaintiff to defendant was admitted in evidence for the limited purpose of explaining entries in the ledger sheets upon which plaintiff relied to establish the book account. It is so treated on this appeal. Defendant's expert witness Davey testified that plaintiff's method of keeping accounts was not unusual for contractors, that they enter the cash received, make up a bill and detailed invoices from measurements taken and then make an actual debit charge for the balance when the job is done. A simple mathematical calculation demonstrates that the debit balance posted on January 14, 1949, is the difference between the bill submitted to defendant and the credits previously posted.

Under the above law and facts we cannot say that the entry of the balance at the time of the submission of the bill and specifications necessarily prevented the account kept in the Dibold ledger from being a book account subject to the four-year statute. The debit items in the Dibold ledger were, of course, in terms of money. When the parties started to

operate under the May 22, 1947, written contract, no particular amount could have been posted as a debit because defendant had the option of using sheetrock interiors and it was not clear how many interiors plaintiff would be called upon to do. When the written contract was superseded by the first oral one the amount to be paid for, and the area encompassed by, the extra plastering work was not definitely set. The second oral contract had set rates which applied to an area not then certain. ▋ There is no binding rule as to the time at which parts of a combined transaction must be reduced to certain amounts and entered in the books, nor as to the number of units which may be grouped together as one transaction. ▋ When it is customary for contractors, as the evidence indicated, to ascertain the amount due and bill at the end of the total transaction only, the entry of the total amount due at that time can be considered timely and in due course of business. It is true that appellant could not judge from the total entered whether it was correct, but such is normal; to judge the correctness of an account, recourse to bills or invoices is generally needed. It was technically somewhat irregular not to enter the amount of the bill itself but to subtract the payments made up to the date of it, but such slight technicality cannot be decisive of the question whether there was a book account or not. The same applies to other technical irregularities complained of like a line left open. It must be noted that appellant concedes that all his payments were correctly entered. As to the correctness of the debit entries extensive evidence was taken.

Appellant's grievance that the amount of the judgment does not correspond with the balance according to the account but is some $15,000 less is wholly without merit. ▋ Evidently, the fact that the plaintiff cannot prove the total amount due according to the book account does not prevent all recovery, but judgment will be given for the lesser amount proved. (*Moore* v. *Teel*, 6 Cal.App.2d 696, 698 [45 P.2d 412]; 1 C.J.S. p. 622.) In this case the trial court disallowed one major item and reduced others. Its decision is supported by substantial evidence and must be affirmed.

Judgment affirmed.

Dooling, Acting P. J., concurred.

A petition for a rehearing was denied December 26, 1956, and appellant's petition for a hearing by the Supreme Court was denied January 23, 1957.