[No. B097482. Second Dist., Div. Three. Sept. 25, 1997.]

STEVE TSEMETZIN, Plaintiff and Appellant, v.
COAST FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant
and Respondent.

1336

**COUNSEL**

Murphy & Gold, Howard Gold and Michael Anatole for Plaintiff and Appellant.

Dickson, Carlson & Campillo, Aaron M. Peck, LaFollette, Johnson, DeHaas, Fesler & Ames and Steven J. Joffe for Defendant and Respondent.

## OPINION

**CROSKEY, J.**—In this case the plaintiff, Steven Tsemetzin, appeals from a summary judgment entered in favor of the defendant Coast Federal Savings and Loan Association (hereafter, Coast Federal). Plaintiff seeks to recover disputed and unpaid rental arrearages allegedly due under a written lease agreement back to 1982. Coast Federal claims that the statute of limitations has long since run on all of plaintiff's claims and that a repudiation and termination of the lease obligations of Coast Federal's assignee by the Resolution Trust Corporation (RTC) also extinguished its liability.

While we agree that plaintiff cannot expand the limitations period by characterizing Coast Federal's lease obligations as "open book" items, we do conclude that plaintiff is at least entitled to seek recovery of the unpaid arrearage for the four years preceding the filing of the complaint. We also conclude that the termination of the lease obligations of Coast Federal's assignee by the RTC can have no legal impact on Coast Federal's continuing lease obligations which were expressly assumed under the terms of both the lease and the assignment. We therefore reverse and remand with directions.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

On or about March 28, 1980, plaintiff entered into a written lease agreement with Coast Federal whereby plaintiff leased to Coast Federal certain real property in Escondido, California, together with a building to be constructed thereon of approximately 11,000 square feet. Under the terms of the lease, Coast Federal was required to pay to plaintiff a ground lease rental plus, upon completion of the building, an additional rental on the building. The lease did not provide for a specific amount of rental, but rather set out a formula for calculating it which included: (1) ground rental adjustments based upon the actual square footage of the land, (2) building rental calculations which depended upon the amount of the actual cost of construction and a 13 percent return which plaintiff was to realize upon the costs of construction of the building and (3) provisions for rental adjustments every five years based upon changes in the consumer price index (CPI).

By 1982, a dispute had arisen between plaintiff and Coast Federal over the amount of rent which was required to be paid. Plaintiff contended that calculation of the ground lease rental was to be based upon a total land area (65,567 square feet) which was different than that claimed by Coast Federal

---

[1]The facts are taken from the declarations and evidentiary documentation filed by the parties in connection with Coast Federal's motion for summary judgment and they are essentially undisputed. The issues on which this case turns are legal, not factual.

(49,278 square feet). In addition, the parties disagreed as to the commencement date for the five-year CPI rent escalations. This dispute resulted in the assertion by plaintiff that Coast Federal was in breach of the lease because it had failed to pay the full amount of rental due. Plaintiff first asserted such claim in 1982 and he pressed it continuously thereafter in repeated oral and written demands to Coast Federal.

Although it is not entirely clear, the record appears to reflect that Coast Federal acknowledged some of plaintiff's rent calculations by making partial payments, from time to time, on the claimed arrearages. For reasons which are not reflected in the record, plaintiff did not file this action to recover the unpaid rental until April 21, 1993.[2]

In January 1989, Coast Federal, with plaintiff's written consent, assigned the lease to Home Federal Savings and Loan Association (hereafter, Home Federal). The original lease, as it was amended in 1981, stated: "Tenant [(i.e., Coast Federal)] agrees that except as herein stated, it will not voluntarily assign this lease or any interest therein, or sublet the demised premises in whole or in part, without the written consent of Landlord [(i.e., plaintiff)], having been first had and obtained. Landlord's approval shall not be unreasonably withheld. *Landlord hereby grants consent to Tenant for any assignment or subletting it may desire to make to*: (a) any bank or trust company, (b) *any savings or loan association,* (c) any successor to Tenant by purchase, merger, or consolidation, (d) any affiliate or subsidiary of Tenant, (e) any developer or investor. . . . *Tenant understands and agrees that in any of the above events Tenant will still remain primarily liable upon all the covenants of this lease, unless a release from such liability was specifically bargained for and given, in writing, by Landlord.*" (Italics added.)

Although the terms of the lease do not appear to have required it, plaintiff also executed a separate specific written consent to the assignment of the lease on January 21, 1989. By the terms of that assignment Coast Federal also agreed to the following provision: "This Assignment shall not act as a release of the Assignor (i.e., Coast Federal) from liability for the continued performance of the terms and provisions of the LEASE; therefore, *Assignor shall remain fully liable for performance of all of the obligations of Lessee under said LEASE.*" (Italics added.)

On July 6, 1992, the Office of Thrift Supervision determined that Home Federal had become insolvent, ordered it to close and placed it into receivership with the RTC as receiver. On October 2, 1992, the RTC, acting under

---

[2]Plaintiff does not make the claim in this case that any of the communications to or from Coast Federal or Coast Federal's partial payments resulted in any delay in the commencement of the statute of limitations period relating to his claim for breach of contract.

the authority granted to it under 12 United States Code section 1821(e)(1),[3] repudiated, disaffirmed and terminated the lease and all amendments and supplements thereto, effective as of January 31, 1993.[4]

As already noted, plaintiff commenced this action on April 21, 1993. After some discovery, Coast Federal filed a motion for summary judgment on July 21, 1995. Based on the factual circumstances summarized above, which plaintiff did not dispute, Coast Federal contended, in effect, that (1) plaintiff's claim for the escalated rental payments accruing on or before January 31, 1993, was barred by the applicable statute of limitations since plaintiff had known of Coast Federal's alleged breach (at least in part) for 11 years before bringing suit and (2) plaintiff's claim for rent accruing after January 31, 1993, was barred by virtue of the RTC's repudiation and termination of the lease.

Plaintiff opposed the motion, arguing the statute of limitations had not run on his claim for rental arrearages. Plaintiff also argued that since Coast Federal had made some partial payments on the claimed arrearage and had exchanged correspondence with plaintiff acknowledging that a dispute existed as to the amount of "unpaid" rentals due, an "open book" account had been established between them[5] and thus the statute of limitations did not commence to run until the date of the last item. With respect to rentals accruing after January 31, 1993, plaintiff argued that Coast Federal had agreed to be responsible for performance of the lease and therefore its liability was unaffected by the RTC's repudiation of the lease. Plaintiff argued such action affected only the liability of Home Federal.

---

[3] 12 United States Code section 1821(e)(1) provides that the appointed conservator or receiver for any insured depository institution "[M]ay disaffirm or repudiate any contract or lease-

"(A) to which such institution is a party;

"(B) the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and

"(C) the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator or receiver's discretion, will promote the orderly administration of the institution's affairs."

This section is a part of the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA) enacted by Congress in 1989 in response to the severe dislocations which occurred in the banking industry as a result of the so-called "savings and loan crisis." (*Resolution Trust Corp.* v. *Diamond* (2d Cir. 1994) 18 F.3d 111, 113 judgment vacated and cause remanded for further consideration in light of *O'Melveny & Meyers* v. *FDIC* (1994) 512 U.S. 79 [114 S.Ct. 2048, 129 L.Ed.2d 67] [California law rather than federal law governs law firm's liability for professional negligence and breach of fiduciary duty] *sub nom. Solomon* v. *Resolution Trust Corporation* (1994) 513 U.S. 801 [115 S.Ct. 43, 44, 130 L.Ed.2d 5].)

[4] In its letter to plaintiff of October 2, 1992, giving notice of the lease repudiation, the RTC noted that a subtenant of Home Federal's was in possession of the property and suggested that plaintiff deal directly with such subtenant.

[5] Although plaintiff had included in his complaint a cause of action for money had and received, he never alleged any cause of action based upon an open book account.

After hearing and considering argument on the issues raised, the trial court, on October 12, 1995, granted Coast Federal's motion and entered judgment in its favor. Plaintiff has prosecuted this timely appeal.

## ISSUES PRESENTED

In their briefs, the parties essentially argue two issues:

(1) Can plaintiff, although he did not plead such a cause of action, successfully claim that he has raised an issue of fact as to whether an "open book" account existed between plaintiff and Coast Federal which would postpone the commencement of the statute of limitations?

(2) Did the repudiation of the lease by the RTC, based upon its discretionary determination that (a) the lease was burdensome to Home Federal and (b) its repudiation would promote the orderly administration of Home Federal's affairs, also work a termination of the continuing lease obligations undertaken by Coast Federal?

There is a third issue which we believe is also raised by this record, but which was not originally argued by the parties:[6] Are the periodic rental payments due under the lease severable contract obligations, thus allowing plaintiff to recover for unpaid rentals accruing within the four year limitation period immediately preceding the filing of his complaint?

## DISCUSSION

### 1. Standard of Review

Summary judgment is granted when no triable issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Villa* v. *McFerren* (1995) 35 Cal.App.4th 733, 741 [41 Cal.Rptr.2d 719].) After examining documents supporting a summary judgment motion in the trial court, this court independently determines their effect as a matter of law. (*Union Bank* v. *Superior Court* (1995)

---

[6]Prior to oral argument, we raised this issue with the parties and asked them to submit additional briefing on the point. We have received and considered their letter briefs and the issue was discussed at oral argument. Although plaintiff did not raise or argue this issue below or, indeed, in his initial briefs to this court, we are nonetheless free to consider the matter since it involves an issue of law on undisputed facts which may be raised for the first time on appeal. (*Barton* v. *New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1207 [51 Cal.Rptr.2d 328]; *Palmer* v. *Shawback* (1993) 17 Cal.App.4th 296, 300 [21 Cal.Rptr.2d 575].) It makes no difference that the issue was first raised on appeal by the court rather than the parties, as long as the parties have been given a reasonable opportunity to address it.

31 Cal.App.4th 573, 579 [37 Cal.Rptr.2d 653].) The moving party bears the burden of establishing, by declarations and evidence, a complete defense to plaintiff's action or the absence of an essential element of plaintiff's case. (*Bacon* v. *Southern Cal. Edison Co.* (1997) 53 Cal.App.4th 854, 858 [62 Cal.Rptr.2d 16], *Westlye* v. *Look Sports, Inc.* (1993) 17 Cal.App.4th 1715, 1726-1727 [22 Cal.Rptr.2d 781]; Code Civ. Proc., § 437c, subd. (o).) The moving party must demonstrate that under no hypothesis is there a material factual issue requiring a trial. (*Flowmaster, Inc.* v. *Superior Court* (1993) 16 Cal.App.4th 1019, 1026 [20 Cal.Rptr.2d 666], clarified in *Romero* v. *American President Lines, Ltd.* (1995) 38 Cal.App.4th 1199, 1202-1203 [45 Cal.Rptr.2d 421].)

When the moving party makes that showing, the burden of proof shifts to the opposing party to show, by responsive separate statement and admissible evidence, that triable issues of fact exist. (*Lorenzen-Hughes* v. *MacElhenny, Levy & Co.* (1994) 24 Cal.App.4th 1684, 1688 [30 Cal.Rptr.2d 210]; Code Civ. Proc., § 437c, subd. (o).) " '[An] issue of fact becomes one of law and loses its triable character if the undisputed facts leave no room for a reasonable difference of opinion. [Citation.]' [Citation.]" (*Preach* v. *Monter Rainbow* (1993) 12 Cal.App.4th 1441, 1450 [16 Cal.Rptr.2d 320].)

As a summary judgment motion raises only questions of law regarding the construction and effect of supporting and opposing papers, this court independently applies the same three-step analysis required of the trial court. We identify issues framed by the pleadings; determine whether the moving party's showing established facts that negate the opponent's claim and justify a judgment in the moving party's favor; and if it does, we finally determine whether the opposition demonstrates the existence of a triable, material factual issue. (*Turner* v. *Anheuser Busch, Inc.* (1994) 7 Cal.4th 1238, 1252 [32 Cal.Rptr.2d 223, 876 P.2d 1022]; *AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].)

■ The burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint.* A "moving party need not '. . . refute liability on some theoretical possibility not included in the pleadings.' [Citation.]" (*Cochran* v. *Linn* (1984) 159 Cal.App.3d 245, 250 [205 Cal.Rptr. 550].) " '[A] motion for summary judgment must be directed to the issues raised by the pleadings. The [papers] filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings and are not a substitute for an amendment to the pleadings.' [Citation.]" (*Nash* v. *Fifth Amendment* (1991) 228 Cal.App.3d 1106, 1116 [279 Cal.Rptr. 465]; accord, *Sutherland*

v. *Barclays American/Mortgage Corp.* (1997) 53 Cal.App.4th 299, 317 [61 Cal.Rptr.2d 614].)

 2. *Plaintiff Cannot Prosecute a Cause of Action for an "Open Book" Account*

■ We believe Coast Federal's argument on this point has merit. Plaintiff did not allege a cause of action claiming that an open book account existed between himself and Coast Federal with respect to the disputed rental arrearages. Plaintiff's failure to plead an open book account precludes his reliance on such a theory to defeat the summary judgment motion. Moreover, in opposition to the summary judgment, the only evidence that such an account ever existed was plaintiff's own declaration in which he claims he kept a running account of the arrearages. He attached a copy of this "account." It consists of four pieces of paper with four columns of information and numbers. It appears clearly to have been prepared at one time (and sometime *after* July 1995) especially for inclusion in his August 14, 1995, opposition to Coast Federal's motion for summary judgment.

A book account is defined in Code of Civil Procedure section 337a, as follows: "The term 'book account' means a detailed statement *which constitutes the principal record of one or more transactions between a debtor and a creditor* arising out of a contract or some fiduciary relation, and shows the debits and credit in connection therewith, and against whom and in favor of whom entries are made, *is entered in the regular course of business as conducted by such creditor or fiduciary, and is kept in a reasonably permanent form and manner* and is (1) in a bound book, or (2) on a sheet or sheets fastened in a book or to backing but detachable therefrom, or (3) on a card or cards of a permanent character, *or is kept in any other reasonably permanent form and manner.*" (Italics added.)

The four-page exhibit apparently prepared by plaintiff for use in opposing Coast Federal's motion clearly, and on its face, fails to meet this three-part statutory test. Thus, even assuming that plaintiff could raise this unpleaded contention, he produced no evidence sufficient to raise a material issue of fact on the point. In addition, plaintiff's basic claim for rental arrearages rests on an express written contract, to wit the lease. It seems to be well settled that monies which become due under an *express* contract (such as rent due under a lease) cannot, *in the absence of a contrary agreement between the parties*, be treated as items under an open book account so as to allow the unpaid creditor to evade or extend the statutory limitations period. (*Parker* v. *Shell Oil Co.* (1946) 29 Cal.2d 503, 507 [175 P.2d 838]; *Warda* v. *Schmidt* (1956) 146 Cal.App.2d 234, 237 [303 P.2d 762]; *Durkin* v. *Durkin* (1955)

133 Cal.App.2d 283, 290 [284 P.2d 185]; cf. *Tillson* v. *Peters* (1940) 41 Cal.App.2d 671, 675-676 [107 P.2d 434]; *Biltmore Press* v. *Usadel* (1970) 6 Cal.App.3d 896, 900 [86 Cal.Rptr. 233].)

Given all of these circumstances, including the absence of any claim or contention Coast Federal ever understood or agreed that its obligations under the lease would or could be treated as open book items, we find no legal or factual basis to support plaintiff's claim that it is now entitled to raise this belated contention. We agree with Coast Federal that the statute of limitations on plaintiff's claims cannot be extended by such a device. However, that does not mean Coast Federal's limitations argument will justify a rejection of plaintiff's *entire* claim.

3. *Plaintiff Is Entitled to Sue for Unpaid Rentals Falling Due Within the Statutory Period*

██ It is settled in California that periodic monthly rental payments called for by a lease agreement create severable contractual obligations where the duty to make each rental payment arises independently and the statute begins to run on such severable obligations from the time performance of *each* is due. (*Tillson* v. *Peters, supra,* 41 Cal.App.2d at pp. 674-675; *Lee* v. *DeForest* (1937) 22 Cal.App.2d 351, 359-360 [71 P.2d 285]; 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 486, p. 612.) As the court in *Lee* v. *DeForest,* stated: "As to instalment contracts generally, the weight of authority is to the effect that an action to recover any unpaid instalment must be brought within the period of limitations after the *particular instalment* becomes payable under the contract. [Citations.] It also has been held that the provisions of an express contract [in this case, the lease], and not the entries in an account kept by plaintiff, control the running of the statute." (22 Cal.App.2d at p. 360.)

The legal consequences of this rule is that the statute of limitations on Coast Federal's alleged obligation to pay an increased rental commenced to run for each month when such an increased payment was due and not paid. Thus, the four-year limitations period applicable to plaintiff's written lease with Coast Federal (Code Civ. Proc., § 337, subd. (1)) would permit a recovery for all unpaid rental installments falling due during the four-year period ending on April 21, 1993. To that extent at least, plaintiff's claim cannot be defeated by the limitations defense asserted by Coast Federal. Also, as already discussed, plaintiff's position with respect to such limitations defense cannot be enhanced beyond such four-year period merely because plaintiff made account entries of the unpaid installments.

### 4. *The Repudiation and Termination of the Lease Could Not Affect Coast Federal's Lease Obligation*

■ It is plaintiff's contention that the repudiation of Home Federal's obligations under the lease did not work a termination of Coast Federal's obligations to remain responsible for the performance of the lessee's burdens under the lease. This argument has merit for at least two reasons.

First, it is clear that under the provisions of FIRREA (see fn. 3, *ante*), which authorize the RTC to terminate the obligation of a failed institution, the only governmental interest is in concluding the obligation of *that* institution. The goal of FIRREA was to stem the "financial hemorrhaging" from the large number of failures in the savings and loan or thrift industry. (*Resolution Trust Corp.* v. *Diamond, supra,* 18 F.3d at p. 113.) To reach that goal, Congress required that RTC conduct its operations in a manner " 'which [ ] maximizes the net present value return from the sale or disposition of' thrift assets that come into its hands." (*Ibid.,* quoting 12 U.S.C. 1441a(b)(3)(C)(i).) In order to discharge this critical function, "Congress armed [RTC] with the power to disaffirm or repudiate contracts or leases that RTC in its discretion determines to be burdensome." (18 F.3d at p. 113, citing 12 U.S.C. § 1821(e)(i).) As another court emphasized, FIRREA grants authority to alter contracts in order to serve three critical public policy goals: (1) "to stem the disruption of banking services within communities, [(2)] lessen the costs of bank liquidation, and [(3)] restore public confidence in the nation's banking system." (*McAndrews* v. *Fleet Bank of Massachusetts, N.A.* (1st Cir. 1993) 989 F.2d 13, 19.) In addition to such public policy considerations, the statutory rationale under FIRREA for permitting the termination of a contractual obligation is that (1) performance under the lease, has become *burdensome to the failed institution* and (2) termination of the lease will promote the orderly administration of *the failed institution's* affairs. Neither the public policy concerns underlying FIRREA nor either of these goals is advanced by extending the effect of the Home Federal lease termination to Coast Federal's obligation under that lease.

Second, an examination of the 1981 amendment to the lease makes it clear that Coast Federal expressly promised and agreed that in event of an assignment to another "savings or loan association" it would "still remain *primarily liable* upon all of the covenants of this lease, unless a release from such liability was specifically bargained for and given, in writing, by the landlord." (Italics added.) Thus, Coast Federal specifically promised to remain liable under the lease. In doing so, it was bound to anticipate that during the lease term its assignee, for whatever reason, might not perform under the lease and that it would be called upon to respond to its commitment. It matters little whether that nonperformance by its assignee resulted

from breach, bankruptcy or a declared insolvency and imposed receivership. Coast Federal agreed to remain "primarily liable" so as to assure plaintiff full performance of the lease in spite of the default of any assignee which plaintiff had been induced to accept on the faith of Coast Federal's promise of continuing liability. Coast Federal cannot now avoid such liability because of action taken by a federal agency designed to impact only the interests of the assignee, Home Federal.

As Coast Federal concedes, there are no cases in point. The authorities cited to us by Coast Federal are easily distinguishable and provide us with no assistance. In *Weeks* v. *Cal-Maine Foods, Inc.* (Miss. 1987) 522 So.2d 725, the Mississippi Supreme Court held that when a lessor accepts a surrender of the lease from the assignee of the original lessee, the lease is terminated as to that lessee as well as the assignee. There is nothing particularly novel about such a rule. In *Weeks,* the lessor clearly intended to accept a surrender of the lease and, having done so, the lease was terminated as a matter of law. To make *Weeks* meaningful here, we would have to assume the very legal conclusion Coast Federal asks us to reach. That is, the RTC's repudiation of Home Federal's burden under the lease had a dispositive impact on Coast Federal's lease obligations.

The case of *Resolution Trust Corp.* v. *Diamond* (2d Cir. 1995) 45 F.3d 665 [132 A.L.R.Fed. 637] held only that an RTC repudiation of the leasehold interests of tenants occupying rent regulated condominium apartments not only reached such leasehold interests but also the rights conferred upon the tenants by New York law. In other words, the effect of the repudiation was to end *all* leasehold interests (including the tenants' statutory rights with respect to the benefits of rent regulation) with the result that a fee title to the property reverted to the owner. However, *Diamond* did not involve a remote lessee as we have in this case and, indeed, does not even speak to the issue before us. It dealt only with the scope of the termination and its adverse impact on *all* benefits claimed by the tenants which arose from the *existence* of their leases.

Finally, in *Resolution Trust Corp.* v. *Ford Motor Credit Corp.* (11th Cir. 1994) 30 F.3d 1384, the court was presented with the problem of a federal savings and loan association which was a lessee of certain computer equipment. The lessor (seller) had assigned the lease to Ford Motor Credit Corporation in order to provide security for the funds which it had advanced to fund the equipment.[7] The RTC repudiated the lease (and all obligations of the failed institution arising thereunder) when the savings and loan association became insolvent. The court in *Ford Motor* held that such repudiation

---

[7] Such a lease is a common financing device.

also extinguished the security interest which the credit corporation had perfected. This holding was in response to the creditor's contention that it was entitled to "additional damages" in excess of accrued rentals. This case likewise provides no help to Coast Federal. First, the lessee under the lease *was* the failed savings and loan association. The repudiation of the lease terminated all of its obligations under the lease. Second, the issue in *Ford Motor* related to damages, an issue not presented in this case. However, the real problem with Coast Federal's reliance on *Ford Motor* is that the *Ford Motor* court did not even purport to address the issue of the termination of the obligation of an original lessee who has promised to *remain* primarily liable. Nor does its holding in any way help us with that issue.

We therefore conclude that RTC's repudiation of the Home Federal lease, affected *only* obligations which could be asserted against *that* institution. It did not impact plaintiff's right to pursue Coast Federal for any and all unpaid rentals coming due after January 31, 1993. Coast Federal remains liable on its express contractual commitments.

### DISPOSITION

The judgment is reversed. The trial court is directed to vacate its order granting summary judgment and to enter a new and different order denying the same and to conduct further proceedings consistent with the views expressed herein.[8] Plaintiff shall recover his costs on appeal.

Klein, P. J., and Kitching, J., concurred.

---

[8]Among the issues which the trial court should consider and resolve is the effect on plaintiff's claims, if any, of three events which occurred subsequent to entry of judgment and while this appeal was pending: (1) plaintiff's bankruptcy proceedings and the orders made therein, (2) the nonjudicial foreclosure of the trust deed on the subject property by the beneficiary, MetLife Capital Corporation (MetLife) and (3) the execution of a settlement agreement and release (eff. June 17, 1997) between Coast Federal and MetLife. Coast Federal has repeatedly urged us to consider these matters on the ground that they have effectively "mooted" plaintiff's appeal. However, we believe that the trial court, on remand, is the more appropriate forum to consider and rule upon that contention. (Cf. *Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 813 [180 Cal.Rptr. 628, 640 P.2d 764].)