Filed 4/21/21  Mims v. Bank of America, N.A. CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JAMES MIMS et. al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> BANK OF AMERICA, N.A., <br><br> Defendant and Respondent. | B308571 <br><br> Los Angeles County <br> Super. Ct. No. <br> 19STCV24305 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara Marie Scheper, Judge. Affirmed.

Terran T. Steinhart for Plaintiffs and Appellants.

Severson & Werson, Kerry W. Franich and Jan T. Chilton for Defendant and Respondent.

# INTRODUCTION

Plaintiffs and appellants James Mims and Bettie Mims[1] appeal from a judgment of dismissal entered after the trial court granted a motion for judgment on the pleadings brought by defendant and respondent Bank of America, N.A. ("the Bank"). The Mims' complaint against the Bank asserted a single claim for declaratory relief. Specifically, they sought a judicial declaration that no balance was due on a home equity line of credit ("HELOC") they opened with the Bank in 2006.

In granting the Bank's motion, the trial court determined the Mims' claim is barred by the statute of limitations. Specifically, it found the claim is predicated on the Bank's alleged breaches of the contracts governing the parties' rights and responsibilities pertaining to the Mims' HELOC account, which occurred outside the four-year limitations period set forth in Code of Civil Procedure,[2] section 337, subdivision (a).

On appeal, the Mims contend: (1) the trial court erred by finding their claim is time-barred, as it is based on a book account, and accrued within the limitations period set forth in section 337, subdivision (b); (2) even if their claim is governed by section 337, subdivision (a), it is not time-barred due to the equitable doctrine of setoff; and (3) the trial court abused its discretion by denying their request for leave to amend. We affirm.

---

1       Because they refer to themselves collectively as the Mims, rather than the Mimses, we will do the same.

2       All statutory references are to the Code of Civil Procedure.

## BACKGROUND

The Mims co-own a parcel of residential real property located in Los Angeles ("the Property"). In July 2004, they opened a $95,000 HELOC account with the Bank, which was secured by a deed of trust encumbering the Property ("Loan 9199"). Loan 9199 was allegedly paid in full in 2005.

In April 2006, the Mims opened a $150,000 HELOC account with the Bank, again secured by a deed of trust on the Property ("Loan 6799"). Sometime in 2016, the Bank informed the Mims they had defaulted on Loan 6799.

Between October 2017 and January 2019, the parties, through their counsel, exchanged written correspondence, in which the Mims disputed the accuracy of the Bank's records regarding the amounts owed on their HELOC accounts. In their letters, the Mims asserted the Bank improperly: (1) charged them for withdrawals they did not make on Loans 9199 and 6799; (2) failed to credit them for payments made on both loans; and (3) "created a third loan account" without their knowledge or consent, and charged them for withdrawals and fees on that account. Thus, the Mims argued that rather than owing any money to the Bank, they were entitled to a refund for overpayments made on the allegedly improper charges related to all three loans. In its responses, the Bank stated the Mims failed to substantiate their claims. Apparently, the parties never entered into a tolling agreement.

While the parties exchanged correspondence, in April 2018, the Bank recorded a notice of default under the deed of trust on Loan 6799 and commenced foreclosure proceedings.

3

Subsequently, the Bank recorded a notice of trustee's sale, which was scheduled for July 18, 2019.

The notice of trustee's sale prompted the Mims to file their complaint against the Bank on July 15, 2019. The complaint reiterated the allegations set forth in the Mims' letters to the Bank, as discussed above. Based on those allegations, the Mims asserted a single claim for declaratory relief. Specifically, they alleged "[a] controversy exists between [the] Bank and the Mims," in that the Bank "contends . . . Loan 6799 went into default [in 2016,] with a total balance due in the neighborhood of $150,000," while "the Mims contend that they paid off Loan 6799 in full and that it did not go into default." They sought "a judicial declaration vindicating [their] contention that Loan 6799 is not in default and/or has been paid in full."

The Bank filed a motion for judgment on the pleadings, arguing the Mims' claim is barred by the statute of limitations. In support of this position, the Bank contended "the gravamen of the action is that [the Bank] breached the promissory note and/or Deed of Trust [securing Loan 6799] by failing to credit payments they made to [it] and/or assessing [the Mims] with withdrawals that did not actually occur." Consequently, the Bank argued, the four-year limitations period for breach of contract claims set forth in section 337, subdivision (a) applies, and the Mims' claim accrued the moment the Bank's wrongful acts took place. Because the improper transactions allegedly occurred no later than 2014, the Bank asserted the claim is time-barred.

In opposition, the Mims contended section 337, subdivision (a) does not apply. Instead, they argued, the limitations period for claims on book accounts, set forth in section 337, subdivision (b), governs their claim, as "the loan history and/or monthly loan

4

statements provided by [the Bank] c[a]me squarely within the definition of a 'book account'" provided in section 337a. The Mims therefore contended their claim is not time-barred, as it did not accrue until the date of the last entry on the book account, which occurred within four years of their complaint being filed. In the alternative, the Mims argued that even if their claim is governed by section 337, subdivision (a), it is not time-barred due to "the case law equitable rule of set-off, or the statutory application of that rule" provided in section 431.70.

After the Bank filed its reply, the Mims obtained the trial court's permission to file a sur-reply. Among other things, the Mims argued that if the trial court were to grant the Bank's motion, it should do so with leave to amend for purposes of allowing them to attach a copy of the "Bank of America Equity Maximizer Agreement and Disclosure Statement" ("Maximizer Agreement") to the complaint. According to the Mims, the Maximizer Agreement demonstrated Loan 6799 is a book account within the meaning of section 337a.

The trial court granted the Bank's motion. In so doing, the court first ruled that, as a matter of law, the Mims' claim is not based on a book account, because it is predicated on "monies due . . . under an express contract," i.e., the deed of trust securing Loan 6799.[3] Subsequently, the trial court determined the Mims could not "save[ ] their claim" through application of section

3      The trial court referenced only the deed of trust, not the Maximizer Agreement, perhaps because the Bank's motion for judgment on the pleadings only attached the deed of trust, and contended that the Mims' claims arose out of breaches of that contract. The Maximizer Agreement was attached to the Mims' sur-reply, and on appeal, both parties rely on the Maximizer Agreement in support of their respective positions.

431.70 or "case authority allowing for a claim of set-off if equity demands." On this point, the court noted: (1) section 431.70, by its terms, may only be used by defendants, not plaintiffs; and (2) the primary case on which the Mims relied in support of their equitable setoff argument, *Plut v. Fireman's Fund Ins. Co.* (2000) 85 Cal.App.4th 98, was distinguishable, as it involved a defendant's assertion of setoff against a judgment entered in the plaintiff's favor. Lastly, the trial court denied the Mims' request for leave to amend, finding the Maximizer Agreement "would not establish an open book account as [the Mims] contend." The Mims appealed from the ensuing judgment.

## DISCUSSION

### I. The trial court did not err by granting the Bank's motion for judgment on the pleadings.

"In an appeal from a motion granting judgment on the pleadings, we accept as true the facts alleged in the complaint and review the legal issues de novo. 'A motion for judgment on the pleadings, like a general demurrer, tests the allegations of the complaint or cross-complaint, supplemented by any matter of which the trial court takes judicial notice, to determine whether plaintiff or cross-complainant has stated a cause of action. [Citation.] Because the trial court's determination is made as a matter of law, we review the ruling de novo, assuming the truth of all material facts properly pled.' [Citation.]" (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 166.)

6

The Mims contend the trial court erred by finding their declaratory relief claim is time-barred. In support of this position, they advance two arguments. We address each in turn below.

## A.     The Mims' claim is not governed by section 337, subdivision (b).

"A claim for declaratory relief is subject to the same statute of limitations as the legal or equitable claim on which it is based. [Citation.]" (*Bank of New York Mellon v. Citibank, N.A.* (2017) 8 Cal.App.5th 935, 943.) Accordingly, "if declaratory relief is sought with reference to an obligation which has been breached and the right to commence an action for 'coercive' relief upon the cause of action arising therefrom is barred by the statute [of limitations], the right to declaratory relief is likewise barred." (*Maguire v. Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 734.)

"To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the 'gravamen' of the cause of action. [Citations.] '[T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations . . . .' [Citation.]" (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22-23.) "What is significant for statute of limitations purposes is the primary interest invaded by [the] defendant's wrongful conduct. [Citation.]" (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1207.)

Per section 337, subdivision (a), a breach of contract claim must be brought within four years of its accrual. (§ 337, subd. (a); see also *Gilkyson v. Disney Enterprises, Inc.* (2016) 244

7

Cal.App.4th 1336, 1341 (*Gilkyson*).) "Traditionally, a claim accrues ""when [it] is complete with all of its elements'—those elements being wrongdoing [or breach], harm, and causation.'" [Citations.]" (*Gilkyson, supra*, 244 Cal.App.4th at p. 1341.)

Pursuant to section 338, subdivision (b), "[a]n action to recover . . . upon a book account . . . consisting of one or more entries" must be brought within four years of "the date of the last item." Section 337a defines "book account" as follows: "[A] detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, is entered in the regular course of business as conducted by such creditor or fiduciary, and is kept in a reasonably permanent form and manner . . . ."

"'An express contract, which defines the duties and liabilities of the parties, whether it be oral or written, is not, as a rule, an open account.' [Citation.]" (*Eloquence Corp. v. Home Consignment Center* (2020) 49 Cal.App.5th 655, 665. (*Eloquence*).) This "general rule," however, "is subject to the exception that an open book account cause of action may lie where the parties had *agreed* to treat money due under an express contract as items under open book account. [Citation.]" (*Ibid.*) Accordingly, "monies which become due under an *express* contract . . . cannot, *in the absence of a contrary agreement between the parties*, be treated as items under an open book account so as to allow [a party] to evade or extend the statutory limitations period. [Citations.]" (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1343-1344 (*Tsemetzin*).)

8

The Mims contend the applicable statute of limitations is section 337, subdivision (b), rather than subdivision (a), because the account histories and billing statements for Loan 6799 satisfy section 337's definition of "book account." Relying on *Warda v. Schmidt* (1956) 146 Cal.App.2d 234 (*Warda*) and *In re Roberts Farms, Inc.* (9th Cir. 1992) 980 F.2d 1248 (*Roberts Farms*), they argue they did not have to show the parties agreed to treat the money due on their HELOC account as items in a book account, because the Maximizer Agreement "does not set the *time **and** amount of payments*." (Bolded text and italics in original.)

In response, the Bank contends *Warda* and *Roberts Farms* are distinguishable from this case. Instead, it analogizes this case to *Eloquence*, arguing that because the Maximizer Agreement "fixed the time for payment" as "once a month" and "set forth the formulas by which the amount of each monthly payment would be calculated[,]" the monies due and at issue are governed by a contract. Consequently, the Bank asserts, the Loan's account histories and billing statements did not create a book account; rather, they illustrated the Bank's "'incidental keeping of accounts under an express contract[.]'" It therefore argues that because the Mims did not plead or otherwise establish the parties agreed to treat the monies due on the HELOC account as items in a book account, section 337, subdivision (b) does not apply.

As discussed below, we agree with the Bank that this case is more analogous to *Eloquence* than *Warda* and *Roberts Farms*. Accordingly, we conclude the trial court correctly found the Mims' claim is based on the Bank's alleged breaches of the contracts governing Loan 6799, rather than a book account, and is subject to the limitations period provided in section 337, subdivision (a).

In *Warda*, the plaintiff entered into a written contract with the defendant to perform plastering work on 171 homes in a subdivision the defendant was developing. (*Warda*, *supra*, 146 Cal.App.2d at p. 235.) The contract set the plaintiff's rate of pay, and stated payment was to be made in three installments based on his completion of various stages in the plastering process. (*Id.* at pp. 235-236.) Subsequently, however, deviations from the defendant's building plans required the plaintiff to do more plastering than originally anticipated. (*Id.* at p. 236.) Thus, the parties entered into an oral agreement, whereby the defendant agreed to compensate the plaintiff for the extra work. (*Ibid.*) The parties did not agree on payment terms. (*Ibid.*) Later, the plaintiff billed the defendant for the additional plastering. (*Ibid.*)

Several years later, the plaintiff sued the defendant to recover the balance due for the work performed. (*Warda*, *supra*, 146 Cal.App.2d at p. 236.) Following a bench trial, the trial court entered judgment in the plaintiff's favor, finding he had proven a book account existed between the parties, on which the defendant owed $23,592.64. (*Ibid.*) On appeal, the defendant contended the plaintiff's loose-leaf ledger book did not, as a matter of law, constitute a book account within the meaning of section 337. (*Id.* at p. 237.) The defendant argued the plaintiff's claim arose out of the parties' oral and written contracts, and therefore was barred by the statute of limitations. (*Id.* at pp. 236-237)

The Court of Appeal affirmed. (*Warda*, *supra*, 146 Cal.App.2d at p. 240.) In support of its holding, the Court of Appeal first acknowledged that, in general, "[t]he mere recording in a book of transactions or the incidental keeping of accounts under an express contract does not itself create a book account. [Citations.] Such memoranda cannot be utilized under the guise

10

of a book account as a device to extend the statute of limitations beyond the time it would run on the contractual obligation. [Citation.]" (*Id.* at p. 237.) It further noted, "[h]owever, the parties to a written or oral contract may, by agreement or conduct, provide that monies due under such contract shall be the subject of an account between them. [Citations.] In that event a cause of action arising therefrom is on the account and not on the underlying contract. [Citation.]" (*Ibid.*)

Applying these principles, the Court of Appeal held the evidence at trial showed the parties agreed to treat payments for the plastering work as monies due on an account between them, as opposed to being governed by their contracts. (See *Warda*, *supra*, 146 Cal.App.2d at pp. 237-238.) Specifically, the Court of Appeal observed: (1) the plaintiff and his foreman, who was also his bookkeeper, testified "the installment-payment provisions of [the parties' written] contract were never followed and that all payments made by [the] defendant to [the] plaintiff were on account"; (2) the defendant's bookkeeper likewise testified that payments to the plaintiff "were on account"; and (3) the parties' oral contracts did not contain any payment provisions. (*Ibid.*)

In *Roberts Farms*, a law firm and a corporation entered into an oral contract, in which the law firm agreed to defend the corporation against a lawsuit in exchange for timely payment for services rendered. (*Roberts Farms*, *supra*, 980 F.2d at p. 1250.) Under that contract, the firm represented the corporation from April 1985 to January 1987, and billed for its services by mailing monthly statements. (*Ibid.*) The corporation failed to pay for services rendered from July 1985 through January 1987. (*Ibid.*)

In December 1987, the corporation filed a voluntary Chapter 11 petition pursuant to 11 U.S.C. § 1121(a). (*Roberts*

11

*Farms*, *supra*, 980 F.2d at p. 1250.) In February 1988, the law firm filed a claim in the bankruptcy proceeding, asserting the corporation was indebted to it in the amount of $144,898.14 for legal services. (*Ibid.*) The corporation objected to the claim, arguing it was barred by the statute of limitations. (*Ibid.*) The bankruptcy court determined the law firm's claim was not time-barred because the firm's records constituted an open book account under section 337a. (*Id.* at p. 1251.) The Bankruptcy Appellate Panel (BAP) affirmed the trial court's decision. (*Ibid.*)

The Ninth Circuit affirmed the trial court's and the BAP's decisions, holding the law firm's ledger cards, time sheets, and billing statements constituted an open book account. (*Roberts Farms*, *supra*, 980 F.2d at pp. 1252-1253.) In so doing, the Ninth Circuit rejected the corporation's argument that "both the creditor and debtor must expressly intend to be bound by the book account before a book account is created." (*Id.* at p. 1252, fn. 3.) The Ninth Circuit observed: "California courts only require that the parties expressly intend to be bound by an open book account when there is an express contract that sets the time and amount of payment. [Citations.]" (*Ibid.*) The Ninth Circuit held that, on the facts before it, no such intention was required, because the parties' "oral contract . . . did not fix a time for payment or a monthly amount payable," and "[t]he amount owing and the time for payment depended on what services [were] performed and on what dates these services were rendered[.]" (*Ibid.*) Consequently, the law firm's record keeping "was not the mere incidental recording of debts accruing from an entirely independent source," as those records "were the only source available to determine what and when [the corporation] owed payment." (*Ibid.*)

12

In *Eloquence*, two consigners agreed to consign jewelry and loose diamonds to a consignee for resale. (*Eloquence*, 49 Cal.App.5th at p. 658.) The agreement required the consignee to provide the consignors with a monthly sales report, showing the items sold. (*Ibid.*) Upon receiving the report, the consignors prepared an invoice setting forth the payment due, which, per the agreement, the consignee was required to pay within 30 days. (*Ibid.*) The agreement also provided for a biannual reconciliation of the inventory of consigned goods, and required the consignee to pay any invoice stemming from the reconciliation within 30 days. (*Id.* at p. 659.) The agreement was amended once while it was in place to reflect the consignors' merger into a single entity. (*Ibid.*)

Subsequently, the consignor sued the consignee and its general partners to recover monies due on two unpaid invoices following a reconciliation, asserting claims for breach of contract and recovery on an open book account. (*Eloquence*, 49 Cal.App.5th at p. 659.) The defendants moved for summary judgment, arguing: (1) both claims were barred by the statute of limitations; and (2) the consignor failed to show the existence of an open book account between the parties. (*Ibid.*) The trial court agreed and granted the defendants' motion. (*Id.* at p. 660.)

The Court of Appeal affirmed. (*Eloquence, supra*, 49 Cal.App.5th at p. 667.) With respect to the consignor's open book account claim, the Court of Appeal determined "the [a]greement is an express contract that specifically defines [the consignee's] obligation to pay the specified amount of each invoice within a specified time period[.]" (*Id.* at p. 665.) Thus, the Court of Appeal determined the consignor was required to demonstrate the parties agreed to treat money due under the agreement as items on an open book account. (See *ibid.*) Subsequently, the Court of

13

Appeal held the consignor failed to "show agreement or conduct evidencing an open book account[.]" (*Id.* at p. 666.) Specifically, it concluded the documents submitted by the consignor were "merely secondary or incidental records" that "serv[ed] to track the status" of the unpaid invoices issued under the agreement, which could not be used to "attempt[ ] an end-run around the statute of limitations for written contract. [Citations.]" (*Ibid.*)

Here, the parties do not dispute that the Maximizer Agreement governs the Mims' HELOC account. That account is defined as "a revolving credit arrangement in which [the Bank] make[s] loans to [the Mims] by advancing funds (**'Advances'**) at [their] direction [and] allow[s] [them] to repay those Advances . . . subject to the terms of [the Maximizer Agreement]." (Bolded text in original.) The Maximizer Agreement specifies the maximum total amount the Mims could borrow on their account, and permits the Mims to take Advances during the 120-month period commencing from the date the account was opened, known as the "Draw Period."

Similar to the consignment agreement in *Eloquence*, and in contrast with the oral contracts in *Warda* and *Roberts Farms*, the Maximizer Agreement defines the Mims' payment obligations. During the Draw Period, the Maximizer Agreement required the Mims to make a "Minimum Payment" each month they had an outstanding balance on their account. After the Draw Period ended, the Maximizer Agreement required them to make a Minimum Payment (as defined) "each month." The Maximizer Agreement then set forth, in detail, the various formulas used to calculate the Minimum Payments, which depended on when payments were due (i.e., during or after the Draw Period) and the payment option the Mims selected. According to the Maximizer

14

Agreement, Minimum Payments were due as shown on "Billing Statements" sent by the Bank.

Through these terms, the Maximizer Agreement, like the consignment agreement in *Eloquence*, "specifically defines [the Mims'] obligation to pay the specified amount of each [Billing Statement]," and delineates when those payments were required. (*Eloquence, supra*, 49 Cal.App.5th at p. 665.) Thus, the monies due on the Mims' HELOC account do not, as a matter of law, constitute items in a book account unless the record reflects the parties agreed—either expressly or by their conduct—to treat them in that manner. (See *id.* at pp. 665-666; *Tsemetzin, supra*, 57 Cal.App.4th at pp. 1343-1344.)

As the Bank correctly points out, however, none of the documents in the record reflect the parties expressly agreed to treat the payments due on Loan 6799 as items in a book account. Moreover, the Mims do not plead any facts establishing the parties made such an agreement through their conduct. For example, in contrast with *Warda*, the Mims do not allege (or argue they could allege) the parties did not follow the provisions defining the Mims' payment obligations under their written contract, i.e., the Maximizer Agreement, and instead made payments and credits on an independent account. (See *Warda, supra*, 146 Cal.App.2d at pp. 237-238.) Thus, Loan 6799's account history and billing statements reflect the Bank's "incidental keeping of [an] account[ ] under an express contract," which "do[ ] not . . . create a book account" and "cannot be utilized . . . as a device to extend the statute of limitations beyond the time it would run on the contractual obligation. [Citation.]" (*Id.* at p. 237.)

15

Accordingly, we conclude the Mims' claim for declaratory relief is not predicated on a book account. Rather, the claim is based upon the Bank's alleged failure to comply with its obligations under Maximizer Agreement and the deed of trust securing Loan 6799, which required it to credit the Mims for payments made, and enumerated the circumstances in which it could issue advances on the HELOC account. Consequently, section 337, subdivision (b) does not apply, and the proper statute of limitations is section 337, subdivision (a).

### B. The Mims have not shown the equitable doctrine of setoff saves their claim.

Next, the Mims argue that even if their claim is governed by section 337, subdivision (a), their claim is not time-barred due to the equitable doctrine of setoff. Specifically, they appear to contend: (1) unlike the statutory right of setoff codified in section 431.70, the equitable doctrine of setoff is not limited to use by defendants, and can be invoked by plaintiffs; and (2) the equitable doctrine of setoff operates in the same manner as statutory setoff, and therefore permits the Mims to rely on time-barred breach of contract claims to seek declaratory relief discharging any balance owed on Loan 6799. As discussed below, we are not persuaded by the Mims' argument.

At the outset, we note the Bank does not appear to dispute the equitable doctrine of setoff may be utilized by plaintiffs. Moreover, caselaw appears to be in accord with the Mims' position on this point. (See, e.g., *Harrison v. Adams* (1942) 20 Cal.2d 646, 647 [plaintiff filed original action in equity seeking to set off the amount of a judgment against him and in favor of

16

defendant by the amount of a promissory note by defendant, which plaintiff had been assigned for purposes of collection].) Therefore, we turn to consider whether the Mims have shown the doctrine applies to save their claim from being time-barred.

Although the Mims concede it does not apply to them, we begin our discussion with section 431.70 because, as discussed above, they still rely on the statute in support of their argument. Section 431.70 provides, in relevant part: "Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations." This statute "provide[s] partial relief from the statute of limitations" by allowing a defendant to "assert [an] expired claim defensively" to "defeat [a] plaintiff's claim in whole or in part." (*Construction Protective Services, Inc. v. TIG Specialty Ins. Co* (2002) 29 Cal.4th 189, 195, 198.)

As noted above, the Mims suggest the equitable doctrine of setoff is, for all intents and purposes, identical to statutory setoff, except that it is not limited to use by defendants. Therefore, they argue that by invoking the doctrine, they may rely on their expired breach of contract claims to seek declaratory relief from the debt owed on Loan 6799.

The Mims, however, do not cite, and we could not locate, any California appellate court decisions demonstrating the equitable doctrine of setoff operates in the manner they contend. Rather, cases applying the doctrine, including the two cited in the

17

Mims' opening brief,[4] reflect it generally applies where a party against whom judgment has been entered seeks to reduce the amount owed thereunder by using a judgment or claim that party held against the other, which is valid at the time setoff was sought. (See, e.g., *Harrison v. Adams, supra*, 20 Cal.2d at pp. 647-648 [plaintiff sought to set off judgment by promissory note]; *Wm. R. Clarke Corp. v. Safeco Ins. Co. of Am.* (2000) 78 Cal.App.4th 355, 357-358 [defendant sought to set off judgment by creditors' claims owed by plaintiff, which defendant acquired by assignment]; *Margott v. Gem Properties, Inc.* (1973) 34 Cal.App.3d 849, 852 [defendant sought to set off judgment by another judgment]; *Keith G. v. Suzanne H.* (1998) 62 Cal.App.4th 853, 856 [same].) So far as we can tell, there do not appear to be any cases to support the Mims' contention. Accordingly, we conclude the Mims' argument on this point is unavailing, as they have not shown it is supported by legal authority.

In sum, the Mims' claim for declaratory relief is not based on a book account; instead, it is predicated on the Bank's alleged breaches of the contracts pertaining to Loan 6799. Consequently, the claim is governed by section 337, subdivision (a). The parties do not appear to dispute the alleged breaches occurred between 2006 and 2014. Thus, because the complaint was not filed until 2019, the claim is time-barred, and the Mims have not shown the equitable doctrine of setoff applies to rescue their claim. We therefore conclude the trial court correctly granted the Bank's motion for judgment on the pleadings.

---

4     The Mims do not cite any authority in support of their main argument on this point in their reply brief.

18

## II. The trial court did not abuse its discretion by denying the Mims' request for leave to amend.

"We review the trial court's denial of leave to amend after granting a motion for judgment on the pleadings for abuse of discretion. [Citation.]" (*Travelers Property Casualty Co. of America v. Engel Insulation, Inc.* (2018) 29 Cal.App.5th 830, 838.) "To show abuse of discretion, [the] plaintiff must show in what manner the complaint could be amended and how the amendment would change the legal effect of the complaint, i.e., state a cause of action. [Citations.]" (*Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 992.)

The Mims contend they should have been afforded leave to amend to attach a copy of the Maximizer Agreement to their complaint because it would establish Loan 6799 is a book account. As discussed in section I.A, *supra*, however, the Maximizer Agreement does not demonstrate their claim is based on a book account; indeed, it actually refutes the Mims' contention. Accordingly, we conclude the trial court did not abuse its discretion by denying their request for leave to amend.

**DISPOSITION**

The judgment is affirmed. Respondent shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

WILLHITE, Acting P.J.

COLLINS, J.