Filed 8/6/19 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| STEVEN V. BLASER et al., | H045071 |
| Plaintiffs and Respondents, | (Monterey County Super. Ct. No. 16CV00328) |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |
| STATE TEACHERS' RETIREMENT SYSTEM, | |
| Defendant and Appellant. | |


THE COURT:

It is ordered that the opinion filed on July 10, 2019, be modified as follows:

On page 22, footnote 13, at the end of the last sentence, add the following: Since Teachers did not challenge in the trial court the substance of the final audit's conclusion that the District had incorrectly reported CalSTRS members' sixth-period compensation as DB-creditable, and since Teachers in the trial court had the full opportunity to assert such substantive challenge, they no longer have any right (assuming they did prior to resolution of their petition) to challenge the audit's conclusion in an administrative appeal.

On page 22, footnote 14, delete the second sentence, and replace it with the following: In its tentative decision, the trial court recognized Teachers' due process claim and the fact that they sought a new hearing to contest the audit. The court acknowledged further that it was CalSTRS's position that "it followed all applicable audit

procedures" and contended "that it is impractical for it to afford members who were not part of a limited audit sample the opportunity to object to a long-completed audit." The trial court decided that its ultimate determination that CalSTRS's claim was time-barred "render[ed] consideration of [these] issue[s] unnecessary."

On page 35, first paragraph, delete the first two sentences of the including the citation to *In re Marriage of King* and footnote 22.

On page 35, second paragraph, delete the third sentence, including the citation to two cases, and replace it with the following: On remand, the trial court may, upon request, address whether Teachers are entitled to assert laches and/or estoppel, and, in the event it determines Teachers may do so, whether laches and/or estoppel serve as a bar to the assertion by CalSTRS of claims related to overpayments.

On page 35, third paragraph, under the heading "IV. DISPOSITION," after the first sentence, and after deletion of "The" at the beginning of the second sentence, insert the following: The case is remanded to the trial court. Upon request, the trial court shall consider whether Teachers may assert laches and/or estoppel as a defense to claims by CalSTRS related to overpayments where such claims are not otherwise barred by the three-year statute of limitations. If, upon such request, the court concludes that Teachers may assert laches and/or estoppel, the court may then proceed to determine whether under such doctrine(s), CalSTRS is precluded from asserting claims related to overpayments not otherwise time-barred. If the court concludes that such doctrine(s) does/do apply, it shall enter a new a different judgment accordingly. If the court concludes that Petitioners may not assert laches and/or estoppel, or if it concludes that the doctrine(s) does not/do not apply, the

The petition for rehearing filed on behalf of respondents Steven B. Blaser et al. is denied.

There is no change in the judgment.

_____
BAMATTRE-MANOUKIAN, J.

_____
GREENWOOD, P.J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| STEVEN V. BLASER et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>STATE TEACHERS' RETIREMENT SYSTEM,<br><br>    Defendant and Appellant. | H045071<br>(Monterey County<br>Super. Ct. No. 16CV000328) |

California State Teachers' Retirement System (CalSTRS) is the state agency responsible for managing contributions made by employees and member school districts to the State Teachers' Retirement Fund. (See Ed. Code, § 22000 et seq.)[1] In March 2014, William Baxter and 10 other retired teachers (the Baxter petitioners) formerly employed by the Salinas Unified High School District (District) filed a petition for a peremptory writ of administrative mandamus, naming CalSTRS as respondent and the District as real party in interest. (See *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 351 (*Baxter*).) The Baxter petitioners sought relief to prevent CalSTRS from continuing to reduce their monthly retirement benefit payments and to restore prior monies they claimed CalSTRS had wrongfully withheld. (*Ibid.*) CalSTRS made the deductions to recoup overpayments that had been made to the Baxter petitioners as a result of a years-long miscalculation by the District of their monthly retirement

---

[1] All further statutory references are to the Education Code unless otherwise specified.

benefits. (*Id.* at p. 347.) The trial court held that the three-year statute of limitations (§ 22008, subd. (a)) barred CalSTRS from (1) recouping prior overpayments made to the Baxter petitioners by adjusting downward their future monthly benefits, and (2) reducing their future monthly benefits to reflect the correct calculation of their benefits. (*Baxter*, *supra*, at pp. 347-348.) In December 2017, a panel of this court reversed, concluding the trial court had erred in holding that CalSTRS's efforts to recoup overpayments were time-barred as to *all* monthly retirement payments, both past and future. (*Id.* at p. 349.) This court found that the continuous accrual theory applied. (*Id.* at p. 382.) Under this theory, " 'a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period. [Citation.]' [Citation.]" (*Id.* at pp. 378-379.)

The present action is a successor to the suit by the Baxter petitioners. In February 2016—while the *Baxter* appeal was pending—respondents in this appeal, who are 31 retired District teachers (hereafter collectively Teachers),[2] filed a petition for writ of mandate and a complaint for declaratory and injunctive relief against CalSTRS and the District. Like the Baxter petitioners, Teachers challenged reductions that CalSTRS had made and continued to make to their monthly retirement benefits to recoup prior

---

[2] As originally constituted, the parties who filed suit consisted of 33 petitioners. Prior to the hearing, four of the original petitioners, pursuant to stipulation and order, withdrew with prejudice. At or about the same time, the petition, by stipulation, was amended to add two new petitioners. The identities of the petitioners in whose favor judgment was entered, whom we refer to herein collectively as Teachers, are: Stephen V. Blaser, Diane S. Butler, Kathey Felt, Prudencia O. Garnica, Margaret J. Greco, Carol S. Hammons, Evelyn C. Hansen, Vera L. Heaston, Corren Hileman, Susan R. Hunter, Ann Jaramillo, Vickie Lauderbach, Linda M. Mayr, Paul W. McCarroll, Ted J. Meyenberg, Colleen A. Neary-Bettiga, Linda H. Perkins, Spiro Pettas, Thomas Aubrey Price, David G. Raptis, Sharon L. Seagraves, Jeffrey Sweet, Barbara Thornbury, Rheta V. Thure, Mary Ann Traylor, Sandra L. Uecker, Torrey K. Valencia, Kenneth E. Watje, Cynthia L. Wolfe, Sharon Slocum, and Steven Howell.

overpayments and to adjust ongoing monthly benefits to their proper amounts. The overpayments were the result of the same miscalculation the District had made to the Baxter petitioners' monthly retirement benefits.

In July 2017—five months prior to this court's decision in *Baxter*—the trial court granted Teachers' petition for writ of mandate in this case, concluding that CalSTRS's claims to reduce Teachers' retirement benefits and collect overpayments were time-barred. The trial court held that CalSTRS, by no later than July 30, 2010, "was 'aware of the possibility' " that there were District schoolteachers other than the Baxter petitioners whose retirement benefits had been incorrectly calculated by the District, but that "CalSTRS did not take action until 2014, more than three years later." In holding that CalSTRS was barred from recouping prior overpayments from Teachers or from reducing future payments to correct the District's prior miscalculation, the trial court concluded that the continuous accrual theory did not apply.

CalSTRS appealed from the judgment. In its appeal, CalSTRS challenges the trial court's rejection of the continuous accrual theory. CalSTRS urges that, under *Baxter*, the continuous accrual theory applies, and that "CalSTRS is time-barred only as to claims relating to pension benefit payments made more than three years before CalSTRS took 'action' by reducing each individual teacher's monthly benefit payment[]."

We hold—following *Baxter*, *supra*, 18 Cal.App.5th 340, which in turn relied on Supreme Court precedent, including *Dryden v. Board of Pension Commrs.* (1936) 6 Cal.2d 575 (*Dryden*)—that the continuous accrual theory applies here to the periodic pension benefit payments made to Teachers. Thus, CalSTRS was time-barred from pursuing any claim against Teachers as to pension benefit overpayments made more than three years before CalSTRS commenced an action. But CalSTRS is not barred by the statute of limitations from pursuing any claim concerning periodic overpayments to Teachers and adjustments to Teachers' future monthly benefits, where the payment accrued not more than three years prior to commencement of an action. Further, the trial

3

court held that CalSTRS commenced an "action" by reducing Teachers' monthly benefit payments beginning in 2014. But we decide—as we did in *Baxter*—that the reduction in benefits made by CalSTRS, under the factual and procedural context presented here, did not constitute the commencement of an "action" within the meaning of the statute of limitations. Instead, we conclude that CalSTRS constructively commenced an "action" at the time Teachers herein filed their verified petition and complaint in the superior court on February 1, 2016. Under well-established legal principles, the filing of a complaint by the plaintiff tolls or suspends the statute of limitations as to any counterclaims existing in favor of the defendant on the date of such filing. (*Union Sugar Co. v. Hollister Estate Co.* (1935) 3 Cal.2d 740, 746 (*Union Sugar*).) Therefore, CalSTRS is deemed to have commenced an "action" to toll or suspend the statute of limitations when Teachers filed suit on February 1, 2016. Accordingly, we hold that CalSTRS may assert claims to recoup overpayments for past monthly payments accruing on or after February 1, 2013, and it may adjust future monthly payments to recoup prior overpayments (on benefit payments that accrued on or after February 1, 2013) and to correct the District's prior miscalculation of monthly benefits going forward. We will reverse the judgment.

## I.     FACTUAL AND PROCEDURAL BACKGROUND[3]

### A.     Pre-Suit Background

Teachers are retired employees of the District who had been classroom teachers.[4] Each of the Teachers is a member of CalSTRS and of its Defined Benefit Program (DB

---

[3] The parties do not dispute that the current litigation and *Baxter* share many of the relevant background facts. We will therefore quote from portions of our opinion in *Baxter*.

[4] One of the 31 Teachers, Colleen A. Neary-Bettiga, was still working for the District as of February 2017 when the petition was filed. And two of the Teachers, Vickie Lauderbach and Torrey K. Valencia, were not classroom teachers. As a result, although we understand that each of the Teachers claim that CalSTRS improperly reduced their monthly retirement benefits based upon extra work having been incorrectly reported by the District as creditable to their respective Defined Benefit Program

4

Program). A portion of Teachers' compensation was reported by the District as being deferred to Teachers' respective DB Program accounts for the purpose of their receiving postretirement benefits.

"CalSTRS was created by the Legislature in 1913 as a retirement system for credentialed California teachers and administrators in kindergarten through community college. (See § 22000 et seq. (Teachers' Retirement Law).)" (*Duarte v. California State Teachers' Retirement System* (2014) 232 Cal.App.4th 370, 384 (*Duarte*).) "CalSTRS is the state agency responsible for managing contributions made by employees and member school districts to the State Teachers' Retirement Fund. [Citation.]" (*Baxter*, *supra*, 18 Cal.App.5th at p. 349.)

"On September 29, 1999, the District and the Salinas Valley Federation of Teachers (SVFT) entered into a tentative collective bargaining agreement for the 1998-1999 and 1999-2000 school years. That agreement included an additional schedule for teachers who taught a sixth period, and changed the definition of a normal workday to include the extra period for all sixth period teachers. Each subsequent iteration of the collective bargaining agreement 'contained provisions defining the sixth period teachers as a separate class of employees and the district has developed two distinct salary schedules that reflect the compensation paid to the two classes of certificated employees.' " (*Baxter*, *supra*, 18 Cal.App.5th at p. 349.)

The Teachers' Retirement Law was amended in 2000 to provide, effective January 1, 2001, supplemental benefits for members of the DB Program. (§ 25000; see Stats. 2000, ch. 74, § 69, p. 1261.) As a result, a Defined Benefit Supplement Program

---

accounts, the dispute as to Lauderbach and Valencia, unlike the remaining 29 Teachers, does not involve the reporting of sixth-period compensation for calculation of retirement benefits. Since the parties do not otherwise make a distinction between the dispute involving Lauderbach and Valencia and the dispute of the remaining Teachers, we will refer to the reporting error dispute throughout as one that concerned Teachers' sixth-period compensation.

(DBS Program) was established to provide, inter alia, retirement benefits that are separate from those paid under the DB Program.  After the DBS Program was established by statute, the hours that CalSTRS members worked beyond full-time work (i.e., in excess of 1,000 hours), such as overtime or summer school work, were creditable to the DBS Program.  Under the DBS Program, the member receives a lump sum or annuity based upon his or her contribution to that program.

"Schools within the District utilized a six period schedule.  [Schoolteachers] within the District typically taught five of those periods and used the additional period to prepare prospective lesson plans.  Some of them, however, including [the Baxter petitioners], agreed to teach during their sixth period time for additional compensation, and to shift their preparation time to before or after the regular school day.  [The Baxter petitioners] believed that this additional compensation would be credited toward their retirement plan [i.e., the DB Program, which was] . . . administered by CalSTRS."  (*Baxter*, *supra*, 18 Cal.App.5th at p. 349.)  Likewise, Teachers here elected to work the sixth period for one or more school years, and in doing so, believed that their compensation for that work would be credited toward their respective DB Program accounts.  The District's reporting to CalSTRS of the compensation earned by the Baxter petitioners and Teachers herein for purposes of calculating their respective monthly retirement benefits is at the heart of the controversy in both cases.[5]

"From September 29, 2008, until October 1, 2008, Mayer Hoffman McCann P.C. (MHM), an accounting firm commissioned by CalSTRS, performed an audit of District records.  CalSTRS received the auditor's findings on December 1, 2008.  The audit

_____

[5] A succinct explanation of the nature of the problem from CalSTRS's perspective is found in a statement made in the declaration of Peter Haley, director of CalSTRS's member accounts services, who declared:  "[T]he reporting of the part-time compensation as part of the member's regular full-time compensation (i.e., crediting it to the DB Program) will inflate the member's DB account resulting in the member receiving an enhanced lifetime pension benefit that they are [*sic*] not entitled to receive."

findings revealed [that] the District's practice of coding [the Baxter petitioners'] sixth period earnings as creditable [to their respective DB Program accounts] was improper. CalSTRS issued a draft audit report on May 27, 2010, adopting MHM's conclusion that the District had incorrectly coded [the Baxter petitioners'] sixth period earnings, causing them to receive a larger monthly retirement benefit than that to which they were entitled." (*Baxter*, *supra*, 18 Cal.App.5th at pp. 349-350.) The draft audit by CalSTRS involved a sampling of the DB Program accounts of 15 CalSTRS members, including the 11 Baxter petitioners. None of Teachers in this case was included in the audit sampling. Although CalSTRS provided the 15 CalSTRS members who were part of the audit sample an opportunity to respond to the draft audit's findings, it did not notify Teachers of the issuance of the draft audit or give them an opportunity to respond to its findings.

"CalSTRS issued its final audit report on July 30, 2010, upholding the draft report's finding. The audit concluded with two corrective orders. First, CalSTRS demanded that, within 60 days, the District submit corrections to CalSTRS to reverse the improperly credited compensation. [CalSTRS advised that o]nce the District submitted corrections, CalSTRS would recalculate the relevant retired teachers' retirement allowances based on the correct final compensation and adjustment notification letters would be sent to affected teachers. Second, the District was ordered to 'remit the total overpayments to CalSTRS for the retired members.' " (*Baxter*, *supra*, 18 Cal.App.5th at p. 350.) In its final audit report, CalSTRS stated as follows: "<u>Finding I – Corrective Action Needed</u>: [¶] Salinas Union High School District must submit corrections to CalSTRS to reverse out the incorrectly reported (coded) pay rate and earnings for all [15] members identified in the Confidential Appendix *and all other members who for which it was incorrectly reported an Assignment Code 57*, starting with the 2003-2004 school year." (Italics added.)

The final audit report of July 30, 2010, was mailed by CalSTRS to the District and to the Baxter petitioners. (*Baxter*, *supra*, 18 Cal.App.5th at p. 371.) At the same time, "CalSTRS apprised each of the [Baxter petitioners] in separate letters that it had concluded from its final audit that the District had 'incorrectly reported (coded) your sixth period teaching assignment (extra duty) earnings . . . as creditable compensation to the Defined Benefit (DB) Program for the . . . school year ending in your retirement. Under state law, these extra duty assignment payments should have been credited to the Defined Benefit Supplement (DBS) program, thus it does not count toward the calculation of your DB retirement allowance. These reporting errors caused your monthly retirement allowance to be overstated by approximately $[] from . . . , your retirement benefit effective date.' Each letter advised further that CalSTRS was entitled under the law to recover the overpayment by reducing future payments to each of the [Baxter petitioners] by no more than five percent, because the overpayment was due to error by the school system, but CalSTRS had requested that the District reimburse the overpayments on behalf of each of the [Baxter petitioners]. Lastly, CalSTRS advised each of the [Baxter petitioners] that if he or she disagreed with its determination, he or she was required to appeal it through an administrative hearing process within 90 days of the letter." (*Id.* at p. 371, fn. omitted.)[6] CalSTRS did not give Teachers notice of or an opportunity to respond to the findings of the final audit report.

At various times between June 2014 and February 2015, Teachers (with four exceptions) received correspondence from CalSTRS advising them that their respective monthly DB Program benefit payments would be reduced and that CalSTRS would collect monies from Teachers that they had received as overpayments at the rate of five

---

[6] CalSTRS similarly advised the District when CalSTRS transmitted the final audit report that the District had incorrectly reported 15 members' extra duty earnings to the DB Program rather than DBS Program, and that the District could appeal through an administrative hearing process. (*Baxter*, *supra*, 18 Cal.App.5th at p. 371, fn. 19.)

percent per month.  In that same time period, CalSTRS reduced the monthly retirement benefits of Teachers (with four exceptions).[7]

### B.    The *Baxter* Litigation

"[The Baxter petitioners] appealed the final audit findings on or before December 3, 2010.  CalSTRS filed a statement of issues with the Office of Administrative Hearings on July 6, 2012.  [After a]n administrative hearing, . . . [o]n July 18, 2013, the administrative law judge ("ALJ") issued a proposed decision . . . in favor of CalSTRS . . . .  [After rejecting the ALJ's proposed decision, o]n January 23, 2014, the [Appeals] Committee [of CalSTRS] issued a decision in favor of CalSTRS."  (*Baxter*, *supra*, 18 Cal.App.5th at p. 350, fn. omitted.)

The Baxter petitioners on March 24, 2014, filed a petition for a peremptory writ of administrative mandamus under Code of Civil Procedure section 1094.5.  (*Baxter*, *supra*, 18 Cal.App.5th at p. 351.)  In its intended decision filed on May 1, 2015, "[t]he trial court concluded that CalSTRS's claims against [the Baxter petitioners] to recover monies paid erroneously due to miscalculation of retirement benefits were time-barred, and CalSTRS was further barred from reducing [the Baxter petitioners'] future monthly benefits."  (*Ibid.*)  Judgment was entered in favor of the Baxter petitioners on June 3, 2015.  (*Ibid.*)

In the appeal by CalSTRS from the judgment entered in *Baxter*, this court concluded that the trial court was correct in finding that some of CalSTRS's claims were barred under the applicable three-year statute of limitations, but that the trial court had erred in concluding that CalSTRS was entirely precluded from pursuing any action against the Baxter petitioners for overpayments or from adjusting future monthly payments.  (*Baxter*, *supra*, 18 Cal.App.5th at p. 348.)  Specifically, this court addressed four principal issues:  (1) the meaning of the language of section 22008 concerning the

---

[7] Respondents Felt, Lauderbach, Neary-Bettiga, and Seagraves did not receive letters from CalSTRS advising them of benefit reductions or that their monthly retirement benefits were being reduced.

9

commencement (or accrual) of the statute of limitations; (2) the date the statute of limitations commenced with respect to CalSTRS's claim against the Baxter petitioners concerning the overpayment of monthly pension benefits; (3) the date CalSTRS commenced an "action" against the Baxter petitioners for purposes of determining whether its claims were, as the trial court found, time-barred; and (4) even if CalSTRS had not commenced an "action" within three years after the statute of limitations accrued, was CalSTRS nonetheless entitled, under the continuous accrual theory, to pursue a claim for recovery of overpayments as to more recent periodic installments and to reduce payments to address the miscalculation issue.

First, this court in *Baxter* interpreted the language of section 22008, subdivision (c) (§ 22008(c)), which provides that the limitations period " 'shall commence with the discovery of the incorrect payment.' "[8]  The question to be decided was whether, for purposes of determining when the limitations period commenced (or accrued), " 'discovery' " under section 22008(c) means (as the trial court held) the date the party obtains actual knowledge of the incorrect payment, or alternatively, the date the party has actual or inquiry notice thereof.  (*Baxter*, *supra*, 18 Cal.App.5th at p. 355.)  We held that a party bringing an action to adjust an incorrect payment must do so within three years after that party discovered, or in the exercise of reasonable diligence, should have discovered, the existence of a pension benefit payment that was incorrect due to a lack of information or inaccurate information.  (*Id.* at p. 363; see also *Yuba City Unified School Dist. v. California State Teachers' Retirement System* (2017) 18 Cal.App.5th 648, 655-659 [holding that under § 22008(c), the limitations period accrues when the party

---

[8] Section 22008, subdivision (c) provides:  "If an incorrect payment is made due to lack of information or inaccurate information regarding the eligibility of a member, former member, beneficiary, or annuity beneficiary to receive benefits under the Defined Benefit Program or Defined Benefit Supplement Program, the period of limitation shall commence with the discovery of the incorrect payment."

discovers, or in the exercise of reasonable diligence should have discovered, the incorrect payment].)

Second, we held in *Baxter* that, as applied to the case, the limitations period as to CalSTRS's claim regarding overpayments made to the Baxter petitioners accrued on August 18, 2005. (*Baxter*, *supra*, 18 Cal.App.5th at p. 368.) This was the date that District employee Cindy Fellows sent a memorandum (hereafter the Fellows memorandum) to the Monterey County Office of Education (MCOE) advising that there were questions concerning how the District reported for purposes of pension calculations the earnings for schoolteachers who worked a sixth period class, and that there were 40 to 50 schoolteachers each year who requested to work a sixth period. (*Id.* at pp. 363-364.) The trial court found that the MCOE was " '[a]t minimum,' the ostensible agent of CalSTRS," and we concluded that this finding was supported by substantial evidence. (*Id.* at p. 366.) Holding that CalSTRS was thus chargeable with knowledge of the contents of the Fellows memorandum (*id.* at p. 367), we concluded that "CalSTRS was placed on *inquiry notice* as of [August 18, 2005,] through the Fellows memorandum, thus triggering the three-year statute of limitations under section 22008(c)." (*Id.* at p. 368, original italics, fn. omitted.)

Third, this court in *Baxter* addressed section 22008, subdivision (a) (§ 22008(a)), which requires that the "action . . . be commenced" within three years of the accrual of the claim.[9] This court concluded in *Baxter* that CalSTRS commenced the " 'action' " on July 6, 2012, when CalSTRS filed a statement of issues in the administrative proceeding.

---

[9] Section 22008, subdivision (a) provides: "For the purposes of payments into or out of the retirement fund for adjustments of errors or omissions with respect to the Defined Benefit Program or the Defined Benefit Supplement Program, the period of limitation of actions shall be applied, except as provided in Sections 23302 and 24613, as follows: [¶] (a) No action may be commenced by or against the board, the system, or the plan more than three years after all obligations to or on behalf of the member, former member, beneficiary, or annuity beneficiary have been discharged."

11

(*Baxter*, *supra*, 18 Cal.App.5th at p. 369.) We reasoned that, while "[a]pplying the Code of Civil Procedure by analogy . . . to the statute of limitations specified in the Education Code is a challenging task" (*id.* at pp. 371), "the filing of a statement of issues to initiate administrative proceedings is the closest analogue to the filing of a civil complaint." (*Id.* at pp. 374-375.)

Fourth, *Baxter* addressed the trial court's finding that CalSTRS's efforts to correct the miscalculation of the Baxter petitioners' retirement benefits was entirely time-barred. We considered CalSTRS's argument "that, even if the trial court correctly found that CalSTRS did not commence an action within three years under section 22008, the court erred in concluding that CalSTRS was barred from pursuing any relief as to any monthly payments, past or prospective" under the continuous accrual theory. (*Baxter*, *supra*, 18 Cal.App.5th at p. 375.) Relying on *Dryden*, *supra*, 6 Cal.2d at pages 580 to 581— where the Supreme Court held that " ' "[t]he right to [monthly] pension payments *is a continuing right*" ' " and any claim to such benefits accrues at the time the periodic payment becomes due (*Baxter*, *supra*, at p. 380, original italics)—we held that the continuous accrual theory applied, and that CalSTRS's claim was not entirely barred. (*Id.* at pp. 379-382.) We concluded that CalSTRS was time-barred as to claims against the Baxter petitioners for pension benefit overpayments made more than three years prior to July 6, 2012 (i.e., the date it commenced the "action"), but it was not barred by the statute of limitations as to "any such action for past or future payments to [the Baxter petitioners] accruing on or after July 6, 2009." (*Id.* at p. 382.)

On December 12, 2017, this court reversed the judgment. Because the Baxter petitioners had, in addition to the statute of limitations, asserted that CalSTRS was barred from proceeding based upon principles of equitable estoppel and laches, and the trial court had not addressed those issues, we remanded the case to the trial court for further proceedings to address those defenses. (*Baxter, supra,* 18 Cal.App.5th at p. 375.)

12

## C. The *Blaser* Litigation

On February 1, 2016, Teachers filed their verified petition for writ of mandate and complaint for declaratory and injunctive relief. Teachers filed a verified amended petition and complaint (amended petition) on or about February 27, 2017, alleging eight causes of action. They alleged in the amended petition that during the period of June 2014 through February 2015, CalSTRS began reducing the monthly retirement benefits of Teachers (with four exceptions)[10] and began collecting monies to recoup overpayments previously received by Teachers. After the trial court in *Baxter* ruled in favor of the Baxter petitioners in May 2015, CalSTRS did not reverse its position by restoring Teachers' monthly pension benefits to prior levels. Accordingly, Teachers filed the mandamus petition to protest (1) CalSTRS's action in reducing Teachers' respective retirement benefits and directing the District to rereport the compensation of CalSTRS members, including Teachers, without giving them notice of, or an opportunity to respond to, CalSTRS's determination; (2) CalSTRS's reduction of Teachers' respective retirement benefits and its directing of the District to rereport Teachers' compensation as creditable to the DBS Program rather than the DB Program, Teachers contending that the statute of limitations barred CalSTRS from taking any action to reduce their retirement benefits; and (3) the District's action of recoding and rereporting Teachers' compensation for their sixth period work as creditable to the DBS Program rather than the DB Program.

In the first cause of action of their amended petition, Teachers alleged a claim for traditional mandate under Code of Civil Procedure section 1085. They alleged that CalSTRS's failure to give them notice of the draft audit or final audit and its failure to permit them to challenge the determination in the audits that resulted in the reduction of Teachers' retirement benefits violated CalSTRS's Teachers' due process rights. Teachers sought in the second cause of action a judicial declaration that they were entitled to notice

---

[10] See footnote 7, *ante*.

13

and an opportunity to respond to CalSTRS's determination prior to reducing Teachers' retirement benefits. Teachers alleged in the third cause of action (traditional mandate) and fourth cause of action (declaratory relief) that CalSTRS had violated its legal duty because CalSTRS was barred by the applicable statute of limitations from reducing Teachers' respective retirement benefits. Teachers alleged in the fifth cause of action (traditional mandate) and sixth cause of action (declaratory relief) that the District had violated the Education Code and thus violated its legal duty by failing to properly code and report Teachers' compensation for sixth period work as creditable to their respective DB Program accounts, and, instead, the District between June 2014 and February 2015 recoded that compensation as creditable to Teachers' respective DBS Program accounts. The seventh cause of action for injunctive relief sought to enjoin CalSTRS from continuing to reduce Teachers' respective retirement benefits while the action was pending. And in the eighth cause of action for injunctive relief, Teachers sought to compel the District to recode their compensation for sixth period work as creditable to Teachers' respective DB Program accounts while the action was pending.

CalSTRS opposed Teachers' request for a preliminary injunction. By order filed May 10, 2016, the trial court granted Teachers' request for a preliminary injunction.

CalSTRS filed opposition to the amended petition. The District filed a statement of partial nonopposition in which it agreed with Teachers that CalSTRS (1) should be barred from reducing Teachers' monthly retirement benefits and from collecting "alleged overpayments," (2) had failed to afford Teachers due process before it directed the District to rereport Teachers' compensation for purposes of calculating retirement benefits, and (3) was time-barred from reducing Teachers' benefits.

After a court trial and submission of the matter, the court filed its intended decision on June 2, 2017, finding in favor of Teachers. The trial court concluded that CalSTRS's claims against Teachers to reduce their retirement benefits and to collect overpayments were time-barred. It reasoned that "by no later than July 30, 2010,

14

[CalSTRS] was 'aware of the possibility' that there were District members, other than those identified in the audit, who had received DB credit for sixth-period service . . . [but] CalSTRS did not take action until 2014, more than three years later." And the trial court concluded that the continuous accrual theory did not apply. It thus rejected CalSTRS's argument that, even if the statute of limitations barred its claims in part, it was entitled to (1) recover overpayments made less than three years before it took action and (2) reduce benefits going forward.

The court on July 10, 2017, entered judgment granting issuance of a peremptory writ of mandate (1) directing CalSTRS to restore Teachers to the benefit level derived by including compensation for sixth period work as creditable to their respective DB Program accounts, and (2) prohibiting CalSTRS from "revisit[ing] the issue of the inclusion of sixth period earnings in each [Teachers'] final compensation for retirement purposes" in any subsequent audit. CalSTRS filed a timely notice of appeal from the judgment.

## II.   DISCUSSION

### A.   Standard of Review

As this court explained in *Baxter*: "Pure questions of law decided by the trial court are reviewed de novo by the court of appeal. (*Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 531.) In such instances, the appellate court is not 'bound by the findings of the trial court. [Citations.]' (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.) Pure legal questions include the interpretation of statutes (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432), California Rules of Court (*Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 81), and municipal laws (*Woo v. Superior Court* (2000) 83 Cal.App.4th 967, 974). Thus, although a determination of whether a claim is barred by the applicable statute of limitations is typically one of fact (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112), when 'the relevant facts are not in dispute, the application of the statute of limitations may be

15

decided as a question of law.  [Citation.]'  (*International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611-612; see also *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 (*Aryeh*) [application of statutes of limitations to undisputed facts is purely legal question reviewed de novo by appellate court].)"  (*Baxter*, *supra*, 18 Cal.App.5th at p. 353.)

As the central question on appeal here is whether the trial court properly held that the continuous accrual theory did not apply, and thus CalSTRS was barred from asserting any claims regarding overpayments with respect to periodic pension benefits to Teachers, our review is de novo.

### B. Continuous Accrual Theory

#### 1. Theory Applies to This Case

##### a. Application of *Dryden v. Board of Pension Commrs.* (1936) 6 Cal.2d 575 and *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340

CalSTRS asserts one challenge to the judgment.  It contends the trial court erred in concluding that, because the continuous accrual theory was inapplicable, CalSTRS was completely time-barred from bringing any action against Teachers with respect to prior monthly pension overpayments or from reducing monthly benefits going forward to address the improper crediting of sixth-period compensation to Teachers' respective DB Program accounts.  CalSTRS argues that "[t]he trial court's rejection of the continuous accrual theory . . . is squarely at odds with [the] holding in *Baxter*."  It contends that because this case presents "near-identical facts" to those in *Baxter*, the continuous accrual theory applies here.[11]

---

[11] CalSTRS thus does not challenge various findings of the trial court, including that (1) by no later than January 27, 2010, CalSTRS had acquired the 2005 Fellows memorandum, a document that this court held in *Baxter* provided constructive notice to CalSTRS that the Baxter petitioners were receiving incorrect pension payments because

16

In general, the period of limitations for bringing an action begins to accrue when all elements of the claim—wrongdoing, harm, and causation—coexist.  (*Aryeh*, *supra*, 55 Cal.4th at p. 1191.)  But under one exception—the continuous accrual theory—"a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period.  [Citation.]" (*Id.* at p. 1192, fn. omitted.)  As this court noted in *Baxter*, *supra*, 18 Cal.App.5th at page 379, the continuous accrual theory has been applied, inter alia, in "a variety of instances in which the plaintiff asserted a right to, or challenged the assessment of, periodic payments under contract or under California statutes or regulations."  Examples include (1) the alleged practice of a lessor's recurrent fraudulent billing in an equipment lease (*Aryeh*, *supra*, 55 Cal.4th at p. 1200.); (2) the monthly imposition of municipal taxes (*Howard Jarvis Taxpayers Ass'n v. City of La Habra* (2001) 25 Cal.4th 809, 818-822 (*Howard Jarvis Taxpayers*); (3) the payment of welfare benefits (*Green v. Obledo* (1981) 29 Cal.3d 126, 141); (4) back wages sought based upon a six-year period of discrimination (*Jones v. Tracy School Dist.* (1980) 27 Cal.3d 99, 103-107); (5) the recovery of monthly pension benefits (*Dryden*, *supra*, 6 Cal.2d at pp. 580-581); (6) a series of allegedly negligent acts concerning the handling, use, disposal, release, and remediation of hazardous substances, where the claim was not time-barred if any of the acts occurred within the statute of limitations (*Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017)

of the incorrect reporting of their compensation for sixth-period work; (2) CalSTRS did not take "action" until 2014, more than three years after accrual of the statute of limitations; and (3) under *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 399, CalSTRS could not claim that the statute of limitations had not commenced simply because it had not discovered the identity of the CalSTRS members (i.e., Teachers) who had been overpaid, since it was aware of the circumstances of the potential overpayment to CalSTRS members.  CalSTRS has therefore abandoned such unasserted challenges. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4.)

14 Cal.App.5th 343, 396); (7) the nonpayment of quarterly royalties for home video sales of movies featuring a songwriter's songs (*Gilkyson v. Disney Enterprises, Inc.* (2016) 244 Cal.App.4th 1336, 1341-1346); (8) the underpayment of monthly payments by an operator under oil and gas operating agreement to a nonoperator for its net interest in oil and gas production (*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.* (2004) 116 Cal.App.4th 1375, 1388-1391 (*Armstrong Petroleum*)); (9) claims against a municipality for interest accrued on sewer service refunds on improperly collected fees, where the claim arose with each new overpayment (*Utility Audit Co., Inc. v. City of Los Angeles* (2003) 112 Cal.App.4th 950, 960); (10) the underpayment by a municipal agency of annual payments to the Low and Moderate Income Housing Fund required by community redevelopment law (*Hogar Dulce Hogar v. Community Development Commission* (2003) 110 Cal.App.4th 1288, 1295-1296) (*Hogar Dulce Hogar*); (11) a utility's underpayment of annual franchise fees (*City of Santa Cruz v. Pacific Gas & Elec. Co.* (2000) 82 Cal.App.4th 1167, 1178-1179); (12) 11 years of monthly rental arrearages that were owed under a commercial lease (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1344 (*Tsemetzin*)); and (13) action on an agreement under which the payee transferred his interest in a business in exchange for lifetime monthly installment payments and a covenant not to compete (*Conway v. Bughouse, Inc.* (1980) 105 Cal.App.3d 194).

Relying on one of the examples of Supreme Court precedent described above—periodic pension benefits as considered in *Dryden*, *supra*, 6 Cal.2d 575—this court concluded in *Baxter* that the continuous accrual theory applied and CalSTRS was therefore not completely time-barred from addressing pension overpayments to the Baxter petitioners.  (*Baxter*, *supra*, 18 Cal.App.5th at p. 382.)  As we explained,  "In *Dryden*, *supra*, 6 Cal.2d at page 577, the petitioner, the surviving spouse of a police officer, presented a claim for a pension 10 months after her husband's death, which was denied by the pension board because the city charter required that such claims be

18

submitted within a six-month period.  After the trial court upheld the board's decision (*ibid.*), the appellate court reversed, concluding that petitioner's claim was not entirely barred and that she was entitled to any future pension benefits paid in monthly installments, as well as any that would have accrued within six months prior to her application.  (*Id.* at p. 582.)  The Supreme Court agreed, . . . [¶] . . . describ[ing] the pension as ' "a periodic[] allowance of money granted by the city in consideration of services rendered or of loss or injury sustained, *and* payments actually made for that purpose." ' (*Id.* at pp. 578-579, original italics.)  Another provision of the charter provided that ' " 'all . . . claims or demands shall be presented within six (6) months after the last item or the account or claim accrued.' [Citation.]" ' (*Id.* at p. 580.)  The court rejected the city's contention that under this provision, any claim or application for a pension was required to be filed within six months.  Instead, the court observed:  ' "The right to pension payments *is a continuing right*.  Petitioner by her conduct may have barred herself from collecting payments [that] have accrued, but this does not mean that she is without means to enforce the right to *present* and *future* pension payments, as distinguished from past and accrued pension payments, provided she proceeds to do so in the manner required by law.  The distinction between a single covenant and a continuing covenant is well settled in the law.  [Citations.]" ' (*Id.* at pp. 580-581, original italics.)  The court in *Dryden* thus held that ' "the petitioner is entitled to all those periodic pension payments [that] fell due within a period of six months prior to her application to the Board . . . and to all those periodic pension payments which have accrued since that date and which will continue to accrue in the future . . . [.]" ' (*Id.* at p. 582.)" (*Baxter*, *supra*, at pp. 379-380.)[12]

---

[12] The Supreme Court has reaffirmed on at least three occasions that, under *Dryden*, a pensioner has a continuing right to receive periodic payments.  (See, e.g., *Aryeh*, *supra*, 55 Cal.4th at pp. 1198-1199; *Abbott v. City of Los Angeles* (1958)

We concluded in *Baxter* that *Dryden* compelled the conclusion that the continuous accrual theory applied to CalSTRS's claims involving the Baxter petitioners. (*Baxter*, *supra*, 18 Cal.App.5th at p. 380.) "We are concerned here with periodic payments to retired school teachers under a defined benefit pension system. The right of each of the [Baxter petitioners] to receive monthly payments, and the obligation of CalSTRS to disburse them, are continuing ones that accrue when such payments become due. (*Dryden*, *supra*, 6 Cal.2d at pp. 580-581.) The language of section 22008(c) is consistent with that principle, in that it provides that '[i]f an incorrect *payment* is due to lack of information or inaccurate information . . . , the period of limitations shall commence with the discovery of the incorrect *payment*.' (Italics added.) Had the Legislature intended the continuous accrual theory to be inapplicable in these circumstances, it could have expressly so stated; at minimum, it could have employed language suggesting that a failure to timely commence an action to address incorrect pension benefit payments would bar an action concerning any such payments that were incorrect for the same reason." (*Ibid.*, original italics.)

The instant proceeding concerns the same periodic (monthly) pension payments presented in *Baxter*. And the claims of CalSTRS that Teachers assert to be time-barred—claims seeking to recoup prior overpayments and to reduce future monthly payments to correct errors in the reporting of sixth-period compensation as DB-creditable—are identical to the claims in *Baxter*. We therefore conclude that under *Baxter*, which was founded upon California Supreme Court precedent, the continuous accrual theory applies here.

---

50 Cal.2d 438, 462; *Dillon v. Board of Pension Commrs. of Los Angeles* (1941) 18 Cal.2d 427.)

### b.    Response to Teachers' Contentions

Teachers, however, contend that the continuous accrual theory should not be applied in this case. Their position consists of five principal contentions: (1) the facts and procedural posture of this case are dissimilar to those in *Baxter*; (2) here, as distinguished from *Baxter*, CalSTRS did not commence an "action" by filing a statement of issues in an administrative proceeding; (3) Teachers did not act "wrongfully" and thus the theory does not apply; (4) Teachers have vested rights to their pension benefits; and (5) since CalSTRS is not the holder of the benefit (i.e., pension rights), it has no standing to assert the applicability of the continuous accrual theory.

First, Teachers argue that the continuous accrual theory should not apply because of significant procedural and factual dissimilarities between the instant case and *Baxter*. They note that, unlike the Baxter petitioners, they were given neither notice by CalSTRS of its draft or final audits of 2010, nor the opportunity to challenge the final audit's findings in an administrative hearing to determine whether their sixth-period earnings were incorrectly reported as DB-creditable. Further, Teachers argue that in *Baxter*, unlike here, there was an administrative finding of incorrect reporting that the Baxter petitioners did not challenge in the superior court proceeding. Here, Teachers urge, there is no such administrative finding that *Teachers'* (as distinguished from the Baxter petitioners') sixth-period earnings were incorrectly reported to their respective DB Program accounts.

The contention lacks merit. Although Teachers did not receive notice of the draft or final audits of 2010 or have an opportunity to challenge the final audit findings in an administrative proceeding, Teachers *do challenge* in their writ proceeding the propriety of CalSTRS's reduction of their pension benefits, urging that the statute of limitations bars CalSTRS's claim. Moreover, even though there was no administrative finding here concerning improper crediting of the individual Teachers' respective sixth-period compensation for pension purposes, they *have been afforded the opportunity* in this

21

proceeding to challenge the substance of the CalSTRS audit. Teachers *could have* challenged in the court below the audit's conclusions that (1) the District had incorrectly reported sixth-period earnings for the Baxter petitioners or for any similarly situated CalSTRS members as DB-creditable, and (2) the District was required to rereport to correct the error. But as the trial court concluded, Teachers did *not* contest the substance of the final audit's conclusion that the District had incorrectly reported CalSTRS members' sixth period compensation as DB-creditable; instead, Teachers asserted "technical challenges" that CalSTRS's claim was time-barred. This conclusion is fully supported by the record. Teachers did not challenge substantively in their briefing below the audit's conclusion that the District had incorrectly reported sixth period compensation as DB-creditable. And their counsel admitted at the hearing on the amended petition that he was not challenging the conclusion that "improper payment[s]" had been made to CalSTRS members as revealed in the audit.[13] Therefore, the fact that this case differs procedurally from *Baxter* does not dictate that the continuous accrual theory does not apply here.[14]

---

[13] The thrust of Teachers' argument at the hearing was that CalSTRS was time-barred from taking corrective action to address overpayments to Teachers that resulted from the District's incorrect reporting of sixth period compensation. Teachers' counsel, Barry Bennett, advised the court: "[T]he audit revealed that . . . allegedly improper payment—and for purposes of this proceeding, we'll assume that it was . . . improper— had been made to a group of people. The audit . . . revealed the incorrect payment. At that point, CalSTRS could simply have determined the scope of the incorrect payment, the audit having already been conducted, and notified all affected people."

[14] Teachers asserted below that CalSTRS violated their due process rights by failing to advise them of the audit conclusions or failing to afford them the opportunity to challenge them in an administrative proceeding. The trial court decided that its determination that CalSTRS's claim was time-barred "render[ed] consideration of this [due process issue] unnecessary." Teachers do not assert on appeal that the trial court erred in this respect. Further, since our conclusions regarding the statute of limitations here resolve the controversy of whether, or to what extent, CalSTRS may assert a claim based upon monthly pension payments that were based upon incorrect reporting by the District, we need not address Teachers' due process issue here.

Second—and related to the first argument—Teachers contend that the continuous accrual theory is inapplicable because, unlike the procedural posture in *Baxter*, here CalSTRS did not commence an "action" by filing a statement of issues in an administrative proceeding. It is true that in *Baxter*, CalSTRS filed a statement of issues in an administrative proceeding, and that this act, we concluded, constituted CalSTRS's commencement of an " 'action' " for purposes of suspending the running of the statute of limitations under section 22008. (*Baxter*, *supra*, 18 Cal.App.5th at p.369.) But this procedural distinction does not preclude a determination here that the continuous accrual theory as a matter of law applies to the claims based upon periodic payments involved in this case. Rather, the fact that CalSTRS did not file a statement of issues here bears on the question of, assuming that the continuous accrual theory applies, *when* CalSTRS commenced an "action" on its claims against Teachers within the meaning of section 22008(a).[15]

Third, Teachers argue that the continuous accrual theory does not apply here because they "did not act wrongfully." Their argument tracks the trial court's reasoning in its rejection of the continuous accrual theory. The court observed that "[t]he theory is fundamentally equitable; it requires ongoing *wrongful* behavior [citations]." (Original italics.) Based on its finding that Teachers had not acted wrongfully and had "reasonably believed their sixth-period service would be DB creditable," the trial court concluded that the continuous accrual theory did not apply.

We respectfully disagree with the trial court's reasoning. The court's reasoning that the continuous accrual theory is inapplicable where the party against whom it is asserted has not acted "wrongfully" appears to be founded on language of the Supreme Court in *Aryeh*, *supra*, 55 Cal.4th 1185. There, the trial court had sustained without leave

---

[15] The question of when CalSTRS commenced, or is deemed to have commenced, an "action' for purposes of suspending (or tolling) the statute of limitations is discussed in part II.B.2., *post*.

to amend a demurrer to a complaint; the plaintiff, the lessee of copy machines, had alleged a claim against the lessor for violation of the unfair competition law or UCL (Bus. & Prof. Code, § 17200 et seq.). The plaintiff complained that the lessor, during service calls, had run excessive test copies on his copy machines that resulted in his owing additional amounts and late fees under his lease that provided for a surcharge if the plaintiff exceeded his monthly copy allowance. (*Aryeh*, *supra*, at pp. 1189-1190.) He alleged that the lessor's practice "was both unfair and fraudulent." (*Id.* at p. 1190.) The trial court concluded that "state law . . . establish[ed] that 'the clock [on a UCL claim] starts running when the first violation occurs,' " and because the first alleged act occurred more than four years before the suit was filed, the plaintiff's UCL claim was time-barred under Business and Professions Code section 17208. (*Aryeh*, *supra*, at p. 1190.)

Applying the continuous accrual theory, the Supreme Court reversed. It explained in *Aryeh* that the theory was "a response to the inequities that would arise if the expiration of the limitations period following a first breach of duty or instance of misconduct were treated as sufficient to bar suit for any subsequent breach or misconduct; parties engaged in long-standing misfeasance would thereby obtain immunity in perpetuity from suit even for recent and ongoing misfeasance. In addition, where misfeasance is ongoing, a defendant's claim to repose, the principal justification underlying the limitations defense, is vitiated." (*Aryeh*, *supra*, 55 Cal.4th at p. 1198.) The Supreme Court went on to describe the continuous accrual theory as follows: "Generally speaking, continuous accrual applies whenever there is a continuing or recurring obligation: 'When an obligation or liability arises on a recurring basis, a cause of action accrues each time a *wrongful act* occurs, triggering a new limitations period.' [Citation.] Because each new breach of such an obligation provides all the elements of a claim . . . each may be treated as an independently actionable wrong with its own time limit for recovery." (*Id.* at p. 1199, italics added, quoting *Hogar Dulce Hogar*, *supra*, 110 Cal.App.4th at p. 1295.) This language in *Aryeh* is the apparent foundation of the

24

trial court's conclusion that the continuous accrual theory did not apply in this instance because Teachers had "not act[ed] wrongfully."

Neither the *Aryeh* court nor the *Hogar Dulce Hogar* court defined the term "wrongful act" in the context of the continuous accrual theory.  And "wrongful" is a term used in the law in many contexts, carrying diverse meanings.  (See *Southland Mechanical Constructors Corp. v. Nixen* (1981) 119 Cal.App.3d 417, 431 ["phrase 'wrongful act or omission' has no single, settled legal meaning," and may refer tortious conduct, a breach of contract, or both], superseded by statute on another ground as stated in *Samuels v. Mix* (1999) 22 Cal.4th 1, 12; see also Black's Law Dict. (10th ed. 2014) p. 358, col. 2 ["wrongful conduct" defined as "[a]n act taken in violation of a legal duty; an act that unjustly infringes on another's rights"].)  But in the context of the language in *Aryeh* quoted in the preceding paragraph, it is apparent that the "wrongful conduct" is conduct by the party against whom the claim is being asserted at the time the recurring obligation or liability arises.  The conduct is the first of the three elements that complete the accrual of a cause of action for purposes of commencing the applicable statute of limitations: "Traditionally, at common law, a 'cause of action accrues "when [it] is complete with all of its elements"—those elements being wrongdoing, harm, and causation.'  [Citations.]" (*Aryeh*, *supra*, 55 Cal.4th at p. 1191, quoting *Pooshs v. Phillip Morris USA, Inc.* (2011) 51 Cal.4th 788, 797.)  In many or most instances involving recurring obligations, that conduct will consist of the defendant-payor failing and/or refusing to make a recurring or periodic payment (or the correct periodic payment) to the payee-claimant.  Cases cited by the *Aryeh* court after identifying the nature of the continuous accrual theory in the passage quoted in the preceding paragraph are ones in which the claimant was the payee. (*Aryeh*, *supra*, at pp. 1199-1200, citing *Green*, *supra*, 29 Cal.3d 126 [payments to welfare recipient]; *Jones*, *supra*, 27 Cal.3d 99 [back wages to employee]; *Dryden*, *supra*, 6 Cal.2d 575 [pension benefits to pensioner's surviving spouse]; *Tsemetzin*, *supra*, 57 Cal.App.4th 1334 [rental payments].)

Based upon our review of legal precedent and our understanding of the principles and policies of the continuous accrual theory, we conclude that the theory is not limited in its application to cases in which a payor has acted "wrongfully" in the sense of failing or refusing to make a periodic payment to a payee. There is no logical reason, founded in law or policy, to hold, for example, that a payor who has made excessive periodic payments—or other periodic payments to which the payee is not legally entitled—over an extended time may not bring an action as to specific periodic payments for which the statute of limitations has not run. (Cf. *Aryeh*, *supra*, 55 Cal.4th at p. 1200 [payor-lessee challenging allegedly fraudulent practice of lessor-payee in excessive periodic billings in equipment lease]; *Howard Jarvis Taxpayers*, *supra*, 25 Cal.4th 809 [payor-taxpayer challenging legality of monthly imposition of municipal taxes not time-barred as to periodic payments for which statute of limitations has not run].) This is consistent with this court's holding in *Baxter*, where we held—notwithstanding that the Baxter petitioners reasonably believed that their sixth-period compensation was DB-creditable (*Baxter*, *supra*, 18 Cal.App.5th at p. 349)—that CalSTRS was not time-barred from pursuing a claim against the payee-Baxter petitioners as to periodic payments for which the three-year statute of limitations had not run.

Further, the " 'wrongful act' " (*Aryeh*, *supra*, 55 Cal.4th at p. 1199) involved in applying the continuous accrual theory is the " 'wrongdoing' " (*id.* at p. 1191) that is one of the elements of the accrued cause of action. While such wrongdoing by the party against whom the claim is asserted may in some instances be morally blameworthy— such as the equipment lessor's unfair and fraudulent recurrent billing practices alleged to have taken place in *Aryeh*, *supra*, at page 1190—in many cases the "wrongdoing" or "wrongful act" may simply consist of a party against whom a claim is asserted being ultimately found in litigation to be legally in the wrong, such as the payor denying a petition for pension benefits based upon a belief that such petition was untimely under the law. (See *Dryden*, *supra*, 6 Cal.2d at p. 577.) Here, the claim of CalSTRS accrued when

its three elements (wrongdoing, harm, and causation) coalesced—wrongdoing here being an incorrect calculation of a monthly pension benefit becoming due and payable by CalSTRS. (See *Aryeh*, *supra*, at p. 1191.) Teachers (like the Baxter petitioners) were not entitled to incorrectly calculated pension benefits resulting in excessive monthly payments, and the "wrongfulness" that permits application of the continuous accrual theory is the actual or potential overpayment based upon a third party's (the District's) miscalculation and misreporting to CalSTRS. (Cf. *Armstrong Petroleum*, *supra*, 116 Cal.App.4th 1391 [defendant's incorrect interpretation of formula for calculating net revenue interest of payee "was the wrong that continued over time," explaining reason for defendant's underpayment on monthly basis].) There is no legal basis for rejecting the continuous accrual theory based upon the assertion that Teachers did not act "wrongfully."[16]

Fourth, Teachers argue that the continuous accrual theory is inapplicable because they "have a vested right to their respective retirement benefit." This argument echoes the statement of the trial court that "[a]pplying the continuous accrual theory . . . would be contrary to the theory's policy; it would deprive [Teachers] of their vested rights. [Citations.]" Although we agree that Teachers clearly hold vested rights to properly calculated retirement benefits, they have no such rights, vested or otherwise, to excess payments based upon incorrect calculations. As we stated in *Baxter*, "[A] contrary conclusion [not applying the continuous accrual theory] would permit a retiree to receive, potentially for years, monthly pension benefits that were not earned; this would be

---

**16** Injecting an element of blameworthiness into the application of the continuous accrual theory could lead to uncertain and inconsistent results. For instance, a party whose claim is asserted to be barred by the statute of limitations may be permitted to assert the continuous accrual theory where the other party is considered blameworthy because he or she did not have a subjective good faith belief in his or her legal position, while a similar claimant would not be able to assert the theory if his opponent in good faith believed his or her legal position to be meritorious.

inconsistent with the principle that although pension provisions are to be broadly construed in favor of the person benefited, ' " 'they cannot be construed so as to confer benefits on persons not entitled thereto.' " [Citation.]' " (*Baxter*, *supra*, 18 Cal.App.5th at p. 380, quoting *Duarte*, *supra*, 232 Cal.App.4th at p. 385.)

Fifth, Teachers assert that the continuous accrual theory does not apply here because it "can only be asserted by the holder of a benefit, and not by the public and/or private entity providing the benefit." (Original underscoring.) In support of their position, Teachers cite *Aryeh*, *supra*, 55 Cal.4th 1185. Teachers' argument is an extension of the trial court's observation that "as to vested rights, such as retirement benefits, courts have applied the continuous accrual theory to protect the *holder* of these rights from wrongful deprivation. [Citations.]" (Original italics.) In essence, Teachers argue that CalSTRS lacks standing to assert that the continuous accrual theory applies to its claim.

This court in *Baxter*, in concluding that under the continuous accrual theory CalSTRS was time-barred only as to claims made more than three years before it commenced an action, implicitly recognized that CalSTRS had standing to assert the theory's applicability. (See *Baxter*, *supra*, 18 Cal.App.5th at pp. 380-382.) Additionally, as we noted above, the cases that have applied the continuous accrual theory have usually, *but not always*, concerned the protection of a payee from a defense that his or her claim was entirely time-barred. On occasion, however, courts have applied the theory to claims by payors that were assertedly time-barred. (See, e.g., *Aryeh*, *supra*, 55 Cal.4th 1185 [theory applied to payor-lessee's challenge to allegedly fraudulent practice of lessor in excessive periodic billings in equipment lease]; *Howard Jarvis Taxpayers*, *supra*, 25 Cal.4th 809 [theory applied to payor-taxpayer's challenge to imposition of periodic tax].) Furthermore, unilateral application of the continuous accrual theory to a payee-claimant of periodic pension benefits would be antithetical to the policies of the Teachers' Retirement Law. It would permit the payee to recoup an

unpaid but otherwise owing periodic pension payment (either unpaid completely or paid in an amount less than what is owing) accruing within the limitations period, while denying a payor from similarly asserting the theory to recover overpayments and/or to establish the correct amount of a periodic payment as to any payment accruing within the same limitations period. Such an approach would be contrary to the policies of the Teachers' Retirement Law. Although pension provisions are to be broadly construed in favor of the person benefited, " ' "they cannot be construed so as to confer benefits on persons not entitled thereto." ' " (*Duarte*, *supra*, 232 Cal.App.4th at p. 385.)[17]

Nor do we understand *Aryeh*, *supra*, 55 Cal.4th 1185 to suggest a contrary conclusion. There, the Supreme Court rejected the contention by the defendant, a lessor of copy machines who had allegedly overcharged its lessee, that because the defendant was a private entity, the plaintiff could not assert the continuous accrual theory to save its time-barred claims: "Canon correctly notes that we have applied the theory of continuous accrual largely in suits against public entities, but nothing in the rationale underlying the doctrine so limits it, and the Courts of Appeal have properly applied the rule equally to continuing or recurring obligations owed by private entities." (*Id.* at p. 1200.) But the Supreme Court neither addressed nor decided whether the continuous accrual theory may be applied in an appropriate case to a payor arguing that its claim related to periodic payments is not time-barred for those periodic payments accruing within the prescribed statute of limitations. "[L]anguage in a judicial opinion is to be

---

[17] We addressed in *Baxter* a parallel concern regarding the potential unilateral application of the continuous accrual theory. This court held that if the theory were held inapplicable to CalSTRS's claim, a consistent position that the theory was inapplicable to the reverse situation—where the payee-pensioner was claiming a series of underpayments to his or her monthly benefits—"would permit CalSTRS to escape its obligation to provide full monthly pension benefits to a retired school teacher by holding that the retiree, by failing to bring an action that was timely as to one or more monthly payments, forfeited all rights to complain about any past or future monthly benefits similarly miscalculated." (*Baxter*, *supra*, 18 Cal.App.5th at pp. 380-381.)

understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered." (*Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1999) 19 Cal.4th 1182, 1195.)[18]

We conclude that the continuous accrual theory applies in this case. This conclusion is compelled by this court's holding in *Baxter*, *supra*, 18 Cal.App.5th 340, which in turn relied on Supreme Court precedent holding the continuous accrual theory applicable to periodic pension benefit payments. (See *Dryden*, *supra*, 6 Cal.2d 575.) As an intermediate appellate court, we are bound by such Supreme Court precedent. (*Auto Equity Sales, Inc.*, *supra*, 57 Cal.2d at p. 455.) CalSTRS was thus not entirely time-barred from pursuing its claim against Teachers. Because the trial court concluded otherwise and did not apply the theory to address which claims were time-barred and which were not, we address below the application of the continuous accrual theory to this case.

### 2. Commencement of the Action

Because the continuous accrual theory applies, CalSTRS may pursue a claim as to any periodic pension benefits that accrued not more than three years before CalSTRS commenced an "action" within the meaning of section 22008(a). (*Baxter*, *supra*, 18 Cal.App.5th at p. 382.) For us to apply the theory here, we must determine the date CalSTRS commenced an "action" within the meaning of the statute.

Since the focus of the appeal by CalSTRS is on *whether* the continuous accrual theory applies to this case, the parties have not addressed in detail the issue of, assuming

---

[18] Indeed, it was held in *Howard Jarvis Taxpayers*, *supra*, 25 Cal.4th 809 that the continuous accrual theory could be asserted by the payor-taxpayer challenging the imposition of a periodic tax. Therefore, a conclusion by this court that CalSTRS, as the payor, lacks standing to assert the theory would be contrary to the requirement that, as an intermediate appellate court, we are bound to apply and follow prevailing precedent of the California Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 (*Auto Equity*).)

30

the theory's applicability, what event constituted CalSTRS's initiation of an "action" under section 22008(a).[19]  CalSTRS states that it commenced the " 'action' [in 2014] by reducing each individual teacher's monthly benefit payment."[20]  This is consistent with the trial court's conclusion that because CalSTRS knew about the Fellows memorandum by January 27, 2010, which "triggered accrual of the statute of limitations," and "CalSTRS did not take action until 2014, more than three years later[, . . . its] claims [were] time-barred."  On the other hand, Teachers argue that the continuous accrual theory is inapplicable here because "CalSTRS has yet to take 'action' against [Teachers] as required by *Baxter*."  Teachers argue that, unlike *Baxter*—where this court held that CalSTRS's filing of a statement of issues in the administrative proceeding with the Baxter petitioners constituted the commencement of an " 'action' " (see *Baxter*, *supra*, 18 Cal.App.5th at pp. 374-375)—CalSTRS filed no such statement of issues here.

This court in *Baxter*, *supra*, 18 Cal.App.5th 340 had the same task of determining the date CalSTRS "commenced" an "action" within the meaning of section 22008(a) for purposes of satisfying the three-year statute of limitations.  We discussed whether any of the following three events identified by the parties and the trial court constituted an "action":  (1) when CalSTRS mailed its final audit report (July 30, 2010), the date urged by CalSTRS; (2) when CalSTRS filed its statement of issues in the administrative

---

[19] During oral argument, this court solicited argument from both counsel as to their respective positions concerning the date that CalSTRS initiated an "action" under section 22008(a).

[20] CalSTRS's statement as to the date it took "action" by reducing Teachers' monthly benefits is somewhat unclear.  But it appears from the record that the precise date of such "action" differed as between various Teachers.  Teachers alleged that CalSTRS began reducing benefits (with four exceptions) in June 2014.  We understand from the allegations that the commencement of reductions as to various Teachers occurred between June 2014 and February 2015, and that CalSTRS admits these circumstances.  Because we conclude that CalSTRS's reduction of benefits did not constitute commencement of an "action," we need not address further the dates that these reductions occurred.

31

proceeding (July 6, 2012), the date urged by the Baxter petitioners; and (3) when CalSTRS " 'took "corrective action" ' by adjusting downward [the Baxter petitioners'] monthly retirement benefits to address both prospectively and retrospectively the error in calculating those benefits" (April 1, 2012), the date selected by the *Baxter* trial court. (*Baxter*, *supra*, at p. 369.)  This court in *Baxter* observed that neither section 22008 nor other provisions of the Teachers' Retirement Law provided definitions for the phrase " 'action may be commenced' " or the term " 'action,' " and that there was no legislative history that provided guidance on the subject.  (*Baxter*, *supra*, at p. 370.)  Drawing upon language found in certain provisions of the Code of Civil Procedure, including Code of Civil Procedure section 30,[21] this court concluded that "the filing of a statement of issues to initiate administrative proceedings is the closest analogue to the filing of a civil complaint."  (*Baxter*, *supra*, at pp. 374-375.)  In so holding, we disagreed with the trial court that the reduction of the Baxter petitioners' monthly retirement benefits constituted the commencement of an " 'action' " by CalSTRS within the meaning of section 22008(a), reasoning that "[w]hile such conduct is indeed a type of 'action' in the broadest sense of the word [citation], the unilateral reduction of [the Baxter petitioners'] monthly payments was not the commencement of an 'action' analogous to the initiation of a lawsuit satisfying the statute of limitations under the Code of Civil Procedure."  (*Baxter*, *supra*, at p. 373.)  We follow that reasoning and holding to conclude here that CalSTRS's conduct of reducing Teachers' monthly retirement benefits between June 2014 and February 2015 did not constitute the commencement of an "action" to satisfy the statute of limitations under section 22008.  (Cf. *City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 248 [holding that city had not unreasonably delayed in filing suit, because it had commenced the action "less than two

---

[21] Code of Civil Procedure section 30 provides:  "A civil action is prosecuted by one party against another for the declaration, enforcement or protection of a right, or the redress or prevention of a wrong."

years after the earliest date any improper [pension] payments were made and well within any applicable statute of limitations"].)

It remains to be determined, therefore, whether CalSTRS here commenced an "action," and, if so, the date of such commencement. Initially we observe that Teachers suggest in their respondents' brief that this court held in *Baxter* that the only way CalSTRS could commence an "action" for purposes of satisfying the statute of limitations was by filing a statement of issues in an administrative proceeding. We did not so hold. Rather, this court concluded in *Baxter* that under the factual and procedural context of that case, CalSTRS's filing of a statement of issues in the administrative proceeding involving the Baxter petitioners' challenge to the final audit was the commencement of an "action." This court did not conclude that in other contexts, the only way CalSTRS could commence an action was through the filing of a statement of issues in an administrative proceeding.

Teachers initiated this lawsuit on February 1, 2016, by filing their verified petition and complaint. This conduct was not the commencement of an "action" directly *by CalSTRS*. But under well-established principles governing civil litigation, the plaintiff's filing of a complaint suspends the running of the statute of limitations as to any claims by the defendant against the plaintiff that are not time-barred when the action is filed. (See *ZF Micro Devices, Inc. v. TAT Capital Partners, Ltd.* (2016) 5 Cal.App.5th 69, 84.) In *Jones v. Mortimer* (1946) 28 Cal.2d 627 (*Jones*), the Supreme Court considered whether the trial court had properly concluded that the defendants' counterclaim against the plaintiff was time-barred. It explained, applying tolling principles, that "[t]he statute of limitations is not available to [the] plaintiff as to [the] defendants' counterclaim if the period has not run on it at the time of commencement of plaintiff's action even though it has run when the counterclaim is pleaded. [Citations.]" (*Id.* at pp. 633.) This principle is founded on a number of Supreme Court cases that preceded *Jones*. (See, e.g., *Union Sugar*, *supra*, 3 Cal.2d at p. 746 [complaint's filing " 'operated to suspend the running of

33

the statute of limitations as to any counterclaims existing [on] that date in favor of the [defendant]' "]; *Whittier v. Visscher* (1922) 189 Cal. 450 [same]; *Perkins v. West Coast Lumber Co.* (1898) 120 Cal. 27, 28 [same].)

Applying this legal principle, the filing of Teachers' petition and complaint here suspended (or tolled) the statute of limitations as to any claims by CalSTRS against Teachers that were timely as of February 1, 2016. Accordingly, since Teachers' petition tolled the statute of limitations on existing claims by CalSTRS, and because CalSTRS contested Teachers' claims in the lawsuit, we conclude that for purposes of applying the continuous accrual theory here, CalSTRS is deemed to have commenced an "action" on February 1, 2016, the date Teachers initiated this lawsuit. Therefore, although CalSTRS is barred from asserting any claims against Teachers related to overpayments for periodic pension benefits that accrued more than three years before February 1, 2016, CalSTRS, under the continuous accrual theory, is not precluded from asserting any such claims as to periodic payments that accrued on or after February 1, 2013—including claims to recoup overpayments for past monthly payments accruing on or after February 1, 2013, and to adjust future monthly payments. (See *Baxter*, *supra*, 18 Cal.App.5th at p. 382.)

### 3.    *Laches and Estoppel*

In the final section of their brief, Teachers urge that, if this court were to conclude that the continuous accrual theory is inapplicable because CalSTRS has not filed an "action" by filing a statement of issues in an administrative proceeding, we should find that CalSTRS is barred by principles of laches and estoppel from subsequently filing a statement of issues "and initiat[ing] an administrative proceeding against [Teachers] at this late date." CalSTRS responds that (1) it "had no duty or authority to file a statement of issues because Teachers were not entitled to a post-audit administrative hearing under section 27102," and (2) Teachers did not raise the arguments below and may not assert them on appeal.

34

"It is well established that issues or theories not properly raised or presented in the trial court may not be asserted on appeal, and will not be considered by an appellate tribunal. A party who fails to raise an issue in the trial court has therefore [forfeited] the right to do so on appeal. [Citations.]" (*In re Marriage of King* (2000) 80 Cal.App.4th 92, 117.)[22] The question of whether a party has committed laches " 'is a question of fact for the trial court.' [Citation.]" (*Piscioneri v. City of Ontario* (2002) 95 Cal.App.4th 1037, 1046.) Likewise, application of the doctrine of equitable estoppel based upon a party's conduct " 'is a factual question entrusted to the trial court's discretion.' " (*Hopkins v. Kedzierski* (2014) 225 Cal.App.4th 736, 756.)

Teachers did not raise below the applicability of either laches or equitable estoppel. The trial court, in its intended decision, acknowledged Teachers' failure to assert either argument. Having failed to raise these issues below, and particularly since resolution of such matters is for the trial court based upon the facts presented to it, Teachers' assertion of equitable estoppel or laches here is forfeited. (*Rogers v. County of Los Angeles* (2011) 198 Cal.App.4th 480, 490, fn. 6 [equitable estoppel]; *City of Oakland v. Public Employees' Retirement System* (2002) 95 Cal.App.4th 29, 52-53 [laches].)

## IV.   DISPOSITION

The judgment entered July 10, 2017, is reversed. The court is directed to enter a new and different judgment providing as follows: "CalSTRS is barred by the three-year statute of limitations of Education Code section 22008 from asserting any claims against Petitioners related to overpayments for periodic pension benefits to them that accrued more than three years before February 1, 2016. To the extent CalSTRS has previously

---

[22] Although the appellate court in *In re Marriage of King*, *supra*, 80 Cal.App.4th at page 117 termed a party's failure to assert an issue or theory at the trial level as resulting in it being "waived," the Supreme Court has observed that " 'forfeiture' " is the more technically accurate term. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2, superseded by statute on other grounds as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962.)

35

deducted from Petitioners' benefits monies claimed due for overpayments on periodic pension benefits accruing prior to February 1, 2013, CalSTRS is directed to return such collected funds to Petitioners, and each of them. CalSTRS, under the continuous accrual theory, is not precluded from asserting any claim regarding past overpayment, collecting upon such past overpayments, or adjusting any future monthly pension benefit payments of Petitioners, where such periodic payments accrued on or after February 1, 2013."

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
GREENWOOD, P.J.

_____
DANNER, J.

*Blaser et al. v. California State Teachers' Retirement System*
**H045071**

Trial Court: Monterey County Superior Court
Superior Court No.:  16CV000328

Trial Judge: The Honorable Lydia M. Villareal

Attorneys for Defendants and Appellants Sheppard, Mullin, Richter & Hampton LLP
State Teachers' Retirement
System:
Raymond C. Marshall

Robert J. Stumpf, Jr.

Attorneys for Plaintiffs and Respondents Law Offices of Bennett, Sharpe, Bennett
Steven V. Blaser et al.:        & Licalsi, Inc.

Barry J. Bennett
Eric J. Licalsi

JRG Attorneys at Law

Robert E. Rosenthal
Sergio H. Parra

*Blaser et al. v. California State Teachers' Retirement System*
**H045071**